**WILLAMETTE VALLEY LUMBER CO.,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. 64–380.**

United States District Court
D. Oregon.

Feb. 23, 1966.

---

KILKENNY, District Judge.

Plaintiff seeks recovery of income taxes and interest in the sum of $44,912.20, paid by the taxpayer for the years 1959 and 1960. The question presented is whether the taxpayer may properly deduct *ad valorem* taxes on land and timber, which timber the plaintiff's predecessor (Willamette National) had purchased under contract, under the terms of which, it agreed to pay such taxes.

Taxpayer is an Oregon corporation, owning and operating facilities for the manufacture of wood products.

Its predecessor was organized in 1946 for the purpose of engaging in the logging of timber and the manufacturing of logs into lumber and other wood products, and specifically, for the purpose of entering into the agreement in question. In 1946 and 1947, it constructed a large sawmill at Foster, Oregon.

The Hills, owners of the property, and Willamette National, in 1946, entered into the Hill agreement, under which the Hills agreed to sell the timber on a specified portion of their lands and Willamette National agreed to purchase. The basic agreement has been supplemented and amended several times since 1946. In 1957, Willamette National was merged into plaintiff and plaintiff thereby became the purchaser under the Hill agreement. The basic agreement in effect in 1959 and 1960 is the one which we will consider, although it is not essentially different from the original agreement.

The language of the Hill agreement specifically applying to the payment of the *ad valorem* taxes on the property is set forth in the footnote.[1]

Annually, since the date of the agreement, Willamette National and the plaintiff have logged substantial amounts of timber from the land and have manufac-

Norman J. Wiener, of King, Miller, Anderson, Nash & Yerke, Portland, Or., for plaintiff.

Gary P. Smith, Trial Atty., Tax Division No. 3, Refund Trial Section, Washington, D. C., and Michael L. Morehouse, Asst. U. S. Atty., Portland, Or., for defendant.

---

1. "Purchaser agrees during the period of this agreement to promptly pay, as the same become due, and in all events before the same become delinquent, all taxes and other charges levied against such of said *lands* and *timber* as shall then be subject to this agreement; provided that Purchaser shall not pay fire-protection charges upon logged land upon which the State has released the slash and shall not pay taxes other than fire-protection charges upon land which has been logged. *Any such taxes paid by Purchaser shall be treated as a part of Purchaser's cost of operation for all purposes of this agreement.*" (Emphasis supplied.)

tured the logs into lumber and other wood products. Incidentally, during such period of time, the plaintiff, and its predecessor, also purchased timber from the United States Forest Service on lands which were intermingled with lands subject to the agreement. Such timber was logged, manufactured and sold in essentially the same manner as the Hill timber. Other logs were purchased from third parties by plaintiff and processed in the same manner.

In the year 1946, and in all intervening years, Willamette National and plaintiff have paid the taxes on the timber and the land pursuant to the agreement. During all of those years, Willamette National and the plaintiff, on their respective federal income tax returns, claimed a deduction of such taxes from ordinary income. Until the years here in question, the right to make such deductions was not challenged. Consistent with the practice of the Willamette National and the plaintiff, the Hills, during such period, did not claim a deduction from their ordinary income on account of the payment of such taxes, nor did the Hills claim that the tax payments were additional payments for stumpage.

The Government contends that the amounts disbursed by plaintiff in payment of the taxes represent an additional cost of the timber to the plaintiff and is not a proper deduction under § 164 of the Internal Revenue Code of 1954. The taxpayer claims a right of a deduction for the amount of these taxes from ordinary income under the provisions of such section and, as an alternative, under § 162. The pertinent sections of the Internal Revenue Code are set forth in the footnote.[2] Likewise, a pertinent Treasury Regulation, Section 1.164–1 provides that real property taxes "are deductible only by the person upon whom they are imposed."

Three witnesses were produced at the time of the trial and these witnesses gave the Court an excellent portrait of the background in connection with the execution of the original contract, its amendments, and the actions of the persons pursuant to the contract.

First, we shall consider Section 164.

■■■ The Tax Court has properly held that there is no personal liability for *ad valorem* taxes in Oregon. *Asthmanefrin Co., Inc.,* 25 T.C. 1139 (1956). Oregon has special statutes with reference to the taxation of standing timber which are set forth in the footnotes.[3]

---

2. Section 162, Internal Revenue Code of 1954. 26 U.S.C. § 162 (1958).

"(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—* * *

"(3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity."

Section 164, Internal Revenue Code of 1954. 26 U.S.C. § 164 (1958 ed.).

"(a) GENERAL RULE.—Except as otherwise provided in this section, the following taxes shall be allowed as a deduction for the taxable year within which paid or accrued:

"(1) State and local, and foreign, real property taxes."

3. ORS 307.010(2) provides among other things:

"(2) Where the grantor of land has, in the instrument of conveyance, reserved or conveyed:

"(a) Any of the timber standing upon the land, with the right to enter upon the ground and remove the timber, the ownership of the standing timber so reserved or conveyed is an interest in real property."

ORS 308.115(1) provides:

"Whenever any standing timber, or any mineral, coal, oil, gas or other severable interest in or part of real property is owned separately and apart from the rights and interests owned in the surface ground of the real property, such standing timber, minerals, coal, oil, gas or other interests or parts shall be assessed and taxed as real or personal property in accordance with existing law in the name of the owner thereof, separately from the surface rights and interests in the real property and may be sold for taxes in the same manner and with the same effect as other interests in real property are sold for taxes."

The plaintiff is entitled to deduct, on its income tax returns, "taxes" to the extent that it was the owner of the property against which the taxes were levied. *Asthmanefrin Co., Inc.*, supra.

Of significance is the fact that the purchaser was compelled to build an elaborate manufacturing plant which cost in the neighborhood of $2,500,000.00. It was required to pay "as stumpage" 50% of its profits on logs cut under the contract and sawed into timber or sold as logs, plus 10% of its profits from timber acquired from other sources. Provision is also made for minimum stumpage rates. Additionally, the contract required plaintiff to operate its mill to a specified annual capacity until all of the timber described in the contract had been logged and removed at the specified rate.

The provisions of the contract here in question, while not identical with those construed in Giustina v. United States, 190 F.Supp. 303 (D.Or.1960), 313 F.2d 710 (9th Cir. 1962), bear sufficient resemblance to make *Giustina* of value in here arriving at a proper decision. *Giustina* covers most, if not all, of the major points raised by the Government. However, the Government properly points to the fact that *Giustina* construed the provisions of 26 U.S.C. § 117(k) (2) (I.R.C. 1939); and 26 U.S.C. § 631(b) (I.R.C. 1954), rather than 26 U.S.C. § 164 (I.R.C. 1954). I find no room for a meaningful distinction between the two. In *Giustina,* we were concerned with the definition of "owner" within the meaning of § 117(k) (2). Here, we are concerned with the definition of "owner" within the meaning of the Revenue rulings as construed in *Asthmanefrin Co., Inc.*, supra, and the Oregon statutes.

Much is said in the briefs about Barclay v. United States, Ct.Cl. 1964, 333 F.2d 847; Jantzer v. Commissioner, 284 F.2d 348 (9th Cir. 1960), and L. D. Wilson, 26 T.C. 474 (1956). While the logic employed in each of those cases is instructive, it is in no way decisive of the issues before me. The sum total of

the results in those cases, however, point to victory for the plaintiff on the facts before me.

 The Congress, in providing no guidelines on the subject, left it open for state law to play a major part in determining whether a vendor or purchaser, under a timber purchase contract, should be viewed as the proper person for deduction of the *ad valorem* tax. The Treasury Department, in 1959, recognized such to be the fact by enacting its Regulation § 1.164–1, which provides that real property taxes "are deductible only by the person upon whom they are imposed." Unfortunately, the Treasury Department did not define "imposed", but I am of the belief that such taxes, in fact, are imposed on those who are required to pay them. Here, the obligation is on the plaintiff.

For a starting point, let us take the practical interpretation as placed on the tax provision of this contract by the parties themselves. Throughout the period from 1946 to this date, the Hills have construed the contract and all of its amendments, to require, not only the payment of the *ad valorem* taxes by plaintiff and its predecessor, but also to permit them to deduct the taxes so paid from their income.

One of the principal requirements of the original contract was the construction of the saw mills and the logging roads by the purchaser. The contract recites that the purchaser held an option to purchase a suitable site for the sawmill and log pond and had adequate funds to erect a modern sawmill and planing mill with an annual capacity of thirty-three to forty million board feet of lumber and the funds to construct the necessary logging roads required to log the Hills timber and that the merchantable timber on the lands owned by the vendors was believed, by the purchaser, to be sufficient to supply timber for the proposed mill for a 15 year period and that the vendors were willing to *sell such timber* to the purchaser and the purchaser

was willing to *buy the same* from the vendors.[4] Following through on the recitals, the agreement required the purchaser to immediately commence the construction of the saw and planing mill on the site. Furthermore, the purchaser was *required* to log and remove all of the merchantable timber and to operate the sawmill until the merchantable timber was cut. A complete discussion and analysis of all of the terms and provisions of the respective contracts would be of benefit to neither the parties, their attorneys, nor the profession. It is enough to say that any reasonable interpretation of those provisions and of the testimony in the case, requires a finding that plaintiff was the "owner" of the timber at the time of assessment in each year, to-wit: July 1st.

■■ While it is true that an agent of the Hills, Timber Service Company, paid the taxes and then billed the plaintiff for the amount of the payment, the fact remains that the plaintiff was required, by the terms of the contract, to pay these taxes. Nor, in my view, is the fact that at least some of the risk of loss, in the event of fire, was placed on the Hills, in any way controlling. That provision must be construed with the other provisions of the contract, but when so construed there remains no question but that plaintiff was the "owner" of a beneficial interest or equitable title in the timber to be cut as of July 1st of each year during the term of the contract. That the sale of the timber, under an executory contract, amounts to a conveyance of an interest in the timber is settled law in the state of Oregon. Seguin et al. v. Maloney-Chambers Lbr. Co., 198 Or. 272, 253 P.2d 252, 256 P.2d 514, 35 A.L.R.2d 1412 (1953). Likewise, an agreement to sell standing timber, with a specified time to remove, constitutes a sale and not a mere license revokable at will. Belt v. Matson, 120 Or. 313, 252 P. 80 (1927). That the real, beneficial and equitable ownership of the property is vested in the purchaser has long been settled by Oregon law. Harder v. City of Springfield, 192 Or. 676, 236 P.2d 432 (1951); Grider v. Turnbow, 162 Or. 622, 94 P.2d 285 (1939). The rule is recognized in timber contracts. Seguin v. Maloney, supra; Paullus v. Yarbrough et ux., 219 Or. 611, 347 P.2d 620, 79 A.L.R.2d 1222 (1960). Defendant, in support of its argument that plaintiff cannot be considered as the "owner" of the timber, relies principally on Nehalem Timber Co. v. Columbia County, 97 Or. 100, 189 P. 212, 191 P. 318 (1920) and Pacific Spruce Corp. v. Lincoln County (D.Or.1927), 21 F.2d 586, aff'd 26 F.2d 435 (9th Cir. 1928). There is language in *Nehalem* and in *Pacific Spruce* which supports the Government's position. In *Nehalem*, the Oregon Court held that an executory contract for the conveyance of standing timber created only an equitable estate in the grantee which was not subject to taxation. That decision was rendered long prior to the enactment of the special statute in Oregon which permitted the taxation of standing timber, separate and apart from the land. Oregon Laws

4. "WHEREAS, Purchaser holds an option to purchase a suitable site for a sawmill and log pond east of Sweet Home, Oregon, and accessible to the railroad of Spokane, Portland and Seattle Railway Company, and has available adequate funds to erect thereon a modern sawmill and planing mill with a capacity for the manufacture of 33 to 40 million feet of lumber during a calendar year, to construct a power plant at said sawmill, to construct logging roads as are required to log Vendors' timber on said lands, to purchase such logging equipment as is required to log Vendors' timber on said lands, and for working capital; and

WHEREAS, Purchaser is willing to construct said sawmill and said facilities upon said site if it is assured of a supply of timber to be manufactured therein which it believes will supply said mill for a period of 15 years after the comletion [sic] thereof; and

WHEREAS, the merchantable timber upon said lands owned by Vendors is believed by Purchaser to be sufficient to supply timber for said proposed sawmill of Purchaser for such 15 year period, and Vendors are willing to sell such timber to Purchaser, and Purchaser is willing to buy the same from Vendors: * * *."

1935, Ch. 274, § 5. The 1935 statute specifically provided for the separate assessment. However, the 1935 law, although permitting the separate assessment of timber, did not permit a separate assessment on an "interest in or part of real property sold under executory contract." Recognizing the futility of such a provision, the Oregon Legislature saw fit to eliminate it in 1943.[5] Since that time the word "owner" means a beneficial or equitable owner and not necessarily the owner of the legal title. Since the *Nehalem* and the *Pacific Spruce* decisions were based on statutes no longer in existence, it is obvious that those cases cannot be here used as authority.

■ Defendant's reliance on the provisions of ORS 311.425(1), is entirely misplaced.[6] Obviously, this section recognizes "ownership" of timber under an executory contract. Where, however, the contract is executory the *owner of the land* may be held responsible for the payment of the tax. This, however, in no way relieves the owner of the timber under the executory contract, from being responsible for such tax. Subdivision (2), of the same statute, again recognizes that standing timber may be separately assessed.

■ Another feature of this case which cannot be overlooked, was the consistent administrative practice of the defendant, in allowing the taxpayer and Willamette National a deduction for taxes in the years 1946 through 1958. The record is uncontradicted that the tax returns were audited in each year. If the Government had raised the question in any one of the early years, the taxpayer could, no doubt, have eliminated any question by arranging to have the timber assessed separately.

While the doctrine of estoppel is seldom employed against the Government in tax cases, Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957) and the auditing of a taxpayer's returns does not prevent the Government from changing its position, Municipal Bond Corp., 41 T.C. 20 (1963); First Nat'l Bank of Montgomery v. United States, 176 F. Supp. 768 (M.D.Ala.1959), aff'd per curiam 285 F.2d 123 (5th Cir. 1951), and the Government is free to determine deficiencies for prior years, if a new and correct determination relates to a question of law, Estate of Carl J. Guenzel, 28 T.C. 59 (1957), aff'd 258 F.2d 248 (8th Cir. 1958), the Government should not lure a taxpayer by its prior position * * * to conduct its business according to certain rules that have been established and then suddenly change these views with regard to one taxpayer. State Farm Mutual Auto Ins. Co. v. United States, 200 F.Supp. 324, 337 (S.D.Ill.1961). The admitted fact that the Government audited these returns for a period of approximately ten years, without complaint, would demonstrate, if nothing else, that there must have been doubt or ambiguity in the taxing statute, in which case the statute must be strictly construed against the Government. Corporation of America v. McLaughlin, C.I.R., 100 F.2d 72 (9th Cir. 1938); Commissioner of Internal Revenue v. Sternberger's Estate, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246 (1955). For that matter, the acceptance of the returns and the auditing thereof by the Internal Revenue Service for this period of ten years could well be said to fall within the doctrine of "contemporaneous construction", which action should not be overruled except for weighty reasons. United States v. Leslie Salt Co.,

---

5. Oregon Laws 1943, Ch. 304, § 2, Now, ORS 308.115(1).

6. ORS 311.425(1).

"(1) No person, firm or corporation shall log off or remove any standing or down timber until the taxes then due and payable on the timber and the taxes then due and payable on the land upon which the timber is or was standing or

situated, including the taxes on any portion of the timber previously logged off or removed, have been fully paid. If the timber is owned entirely separate and apart from the land whereon it grows or is situated and is not merely held under an executory contract, the owner of the land is not responsible for the taxes on the timber."

350 U.S. 383, 76 S.Ct. 416, 100 L.Ed. 441 (1956) and Lesavoy Foundation v. Commissioner of Internal Revenue, 238 F.2d 589, 591 (3rd Cir. 1956). But aside from the question presented by the acceptance of the returns and the annual audits to the date of the filing of the returns here challenged, I find that plaintiff was the "owner" of the timber under Oregon law and the facts here presented.

Defendant's argument placing great weight on the clause in the contract against assignment falls on sterile ground for the reasons that: (1) such a clause is for the benefit of the vendor and has little to do with the issue of "ownership", and (2) unless the clause contains a provision for forfeiture, affirmative action must be taken by the vendor. Giustina v. United States, 190 F.Supp. 303 (D.Or.1960); Smith v. Martin, 94 Or. 132, 185 P. 236 (1919).

On the entire record, I find that on July 1, 1959, and July 1, 1960, the plaintiff was the "owner" of the timber and entitled to deduct, on its income tax returns, the taxes paid on such timber. Section 164 of the Internal Revenue Code of 1954 permits this deduction. Plaintiff being the "owner" of the timber, dictates a finding that plaintiff was entitled to deduct, on its returns, that portion of the 1959–60 and 1960–61 *ad valorem* taxes which were assessed upon the timber as agreed upon by the parties in paragraph 53 of the pre-trial order. Plaintiff, however, would not be entitled to deduct, under § 164, that proportion of the taxes assessed against the land.

## CLAIM UNDER SECTION 162

It is the claim of the plaintiff that to the extent it may not be entitled to deduct the taxes on the land for the year in question under § 164, it is entitled to deduct such sums as a business expense under § 162 of the Internal Revenue Code of 1954 and claims that such taxes were paid for:

"(a) access rights to timber on the intermingled Forest Service lands and the right to manufacture logs produced from such timber into lumber and other wood products, or to sell such logs.

(b) the right to purchase logs from third persons and the right to manufacture the purchased logs into lumber on the premises, or to sell such logs.

(c) the right to defer liquidation of the timber subject to the Hill agreement."

The contract specifically provides that the taxes so paid should be treated as part of the purchaser's cost of operation.[7]

Of great importance, on this claim, is the weight which I should give to the testimony of the live witnesses. I had the opportunity to see and to observe these gentlemen and I have nothing but confidence in the truth of their testimony as to the negotiations leading up to the execution of the original and amended contracts. That the tax payments were to be viewed as an ordinary business expense, is beyond question. A finding is justified that an agreement would never have been reached, if the Hills had not consented to the use of their lands for access rights to timber on the intermingled Forest Service lands and the right to manufacture logs produced from such timber into lumber and other wood products. Furthermore, it is crystal clear that the original contract would never have been signed, if the Hills had not consented to a permission in the purchaser to secure logs from third persons and manufacture those logs into lumber on the premises, or to sell such logs. Obviously, these land use rights were not incidental, as claimed by the Government, to the removal of the Hills' timber. The fact that the parties did not designate and set aside a portion or all of the expense as "rentals" or "land use payments" is of no significance. Neither did the parties label the payments as "stumpage" as urged by the defendant. In any event, the label is not important.

7. "Any such taxes paid by purchaser shall be treated as part of purchaser's cost of operation for all purposes of this agreement."

Weinert's Estate v. Commissioner of Internal Revenue, 294 F.2d 750, 752 (5th Cir. 1961). As Judge Wisdom said in that case, "[E]conomic realties determine tax consequences." True enough, the witnesses for plaintiff, who assisted in negotiating the contract, did not label the payments as "rental" or for "land use." Nevertheless, they emphatically testified that the payment of those taxes was to be viewed as part of their cost of operation. The cost of operation, without question, would include any extra sums that might have been paid for the use of the land in order to harvest timber, other than the Hills. Consequently, I find that the portion of the taxes paid on the land, as distinguished from the timber, was paid as part of the cost of operation, whether it be viewed as land rental or land usage, and was properly deductible by the plaintiff.

I find on the record of this case that the taxes in question paid on the land were paid as ordinary and necessary expenses paid and incurred during the taxable year by the plaintiff, in carrying on its business, and were paid as rental or a land use payment required to be made as a condition to the continued use or possession of the property for the purposes of its trade and business. The plaintiff had not taken and is not taking a title or an equity in the land as such. Its equitable ownership is in the timber, as distinguished from the land, even though the life of the timber must necessarily depend on its sustenance obtained from the land.

The fact that ORS 307.010 defines land as including, "trees" is not controlling. Other Oregon tax statutes, previously cited, permit the separate assessment of land and timber.

Plaintiff is entitled to recover the indicated amounts, together with interest as allowed by law.

The agreed facts in the pre-trial order and this opinion shall stand as my findings and conclusions. Additional findings may be suggested by counsel. Counsel for plaintiff shall prepare and present an appropriate judgment.