RUSSELL et al, *Appellants, Cross-Respondents,*
*v.*
SEALED POWER CORPORATION, *Respondent,*
*Cross-Appellant.*
(No. 76-03-03040, SC 24548)

563 P2d 712

Argued and submitted March 9, 1977.

David W. Dardano, Portland, argued the cause for appellants, cross-respondents. With him on the briefs were Dardano & Mowry, Portland.

Ridgway K. Foley, Jr., Portland, argued the cause for respondent, cross-appellant. With him on the brief were Souther, Spaulding, Kinsey, Williamson & Schwabe, and John E. Hart, Portland.

Before Denecke, Chief Justice, and Holman, Howell and Davis, Justices.

DAVIS, J., Pro Tempore.

**DAVIS, J.,** Pro Tempore.

On January 27, 1966, plaintiffs as lessors and defendant as lessee entered into a lease in writing of commercial property located in Portland, Oregon, for a term of 15 years commencing April 1, 1966. The lease provided that defendant would pay $740 a month and there was typed in after the provision for rent the following language:

"Lessee agrees to pay any taxes exceeding $1480.00 annually."

This was a form agreement prepared by the plaintiffs, neither party represented by legal counsel. Plaintiffs notified defendant on December 17, 1975, that by its failure to pay the 1975-76 taxes in excess of $1,480, the lease was terminated. Upon refusal of defendant to vacate the property, plaintiffs bring this action in forceable entry and detainer.

At the commencement of the trial defendant entered an oral general denial, and during the hearing and with the consent of the parties and the court, defendant entered orally an equitable defense. The transcript fails to designate the nature of this defense.

The facts were submitted to the trial court by stipulation, which is summarized as follows: Each year while the lease was in effect and until 1975, plaintiffs, residents of San Francisco, California, received in October a tax statement from Multnomah County, Oregon, on the leased premises. Plaintiffs immediately thereafter sent a copy of this statement to R. J. Bull, a representative of the defendant, at LaGrange, Indiana, with request for the payment of the difference between the net tax assessed after full discount and $1,480. Mr. Bull forwarded the tax statement to defendant's Michigan office and the excess tax was paid by check directly to plaintiffs. Plaintiffs paid Multnomah County for the taxes assessed. Defendant paid the excess taxes within two weeks of plaintiffs' demand prior to November 15 of each year. On October

[ 245 ]

16, 1975, plaintiffs, following the identical procedure, sent a copy of the 1975-76 tax statement to the defendant with the request for payment. It was not paid, and again on November 10, 1975, plaintiffs requested payment, which defendant failed to do. On December 17, 1975, plaintiffs terminated the lease agreement by registered mail to the defendant at its Indiana office and to its Michigan office and hand-delivered a notice of termination to the defendant at its Portland office located at the leased premises. On December 19, 1975, defendant mailed to the plaintiffs its check for $911, which said sum was the difference between the net total tax after full discount and $1,480. Plaintiffs rejected the tender and have accepted no rent payments since November, 1975.

The trial judge concluded that the tax owed by defendant was to be included as additional rent, and although defendant was "technically" in default, the trial judge denied plaintiffs recovery of the leased premises on the basis of "inadvertent mistake" by defendant's employees. It had been stipulated that defendant's failure to pay before November 15, 1975, was due to an inadvertent "mixup." Plaintiffs appeal and defendant cross-appeals on the ruling of the trial judge that the tax was considered additional rent and that it was due on November 15, 1975.

Plaintiffs contend that the court could not grant equitable relief from a statutory forfeiture,[1] citing *Baker v. Lehrer,* 210 Or 635, 312 P2d 1072 (1957); *Caine v. Powell,* 185 Or 322, 202 P2d 931 (1949); and *Rainey v. Quigley,* 180 Or 554, 178 P2d 148, 170 ALR 1149 (1947). ORS 16.460(2), however, provides that equitable defenses may be pleaded in proceedings such as this, and equitable relief granted if proved. *State Hwy. Comm. v. Demarest,* 263 Or 590, 503 P2d 682 (1972); *Fry v. D. H. Overmyer Co., Inc.,* 269 Or 281, 525 P2d 140 (1974).

---

[1] ORS 91.090.

We have not considered the equitable matter raised for we are of the opinion that the trial court erred in holding that the excess tax owed by the defendant was to be treated as additional rent and that it was due as of November 15, 1975.

Plaintiffs argue that the conduct of the parties over the years, including the prompt payment of excess taxes by the defendant, indicates that both plaintiffs and defendant treated these taxes as an additional rent and that if plaintiffs had been present in court, they would have testified to this effect.

It was stipulated that defendant's testimony would have been that the payment was to be considered "a covenant to pay separately over and above the rent." The question presented to this court is: What was the intent of the parties at the time of the execution of the lease agreement?

> "It is a general rule of construction that where language of a lease is of doubtful meaning and suscept-ible of two constructions it must be construed favorably to the lessee. To construe a lease is to ascertain the meaning of the parties thereto. * * *" *Swetland Bldg. Co. v. Children's Home,* 127 Or 188, 192, 270 P 927 (1928).

*See also Weddle v. Parrish,* 135 Or 345, 295 P 454 (1931). It is also a general rule that any ambiguity in an agreement should be resolved against the party using the ambiguous language. *Cimarron Ins. Co. v. Travelers Ins. Co.,* 224 Or 57, 355 P2d 742 (1960); *Jones v. Insurance Co. of North America,* 264 Or 276, 504 P2d 130 (1972).

ORS 311.505 provides for quarterly payments of property taxes with discounts available for early payments. The record reveals that the taxes on the leased premises for 1975-76 were $2,391.38. Since the lease provides that "Lessee agrees to pay any taxes exceeding $1480 annually," it is obvious from an arithmetical standpoint that the first installment due on this property in excess of $1,480 would not acrue

until May 15, 1976. However, regardless of whether the taxes were paid quarterly, the plaintiffs could in no way profit by the discount. Any savings by payment by November 15 or loss of discount by payment by quarters would be for the benefit of or loss to the defendant. Therefore, we believe that despite the prepayment of taxes by the lessee in prior years, it was the obligation of the lessors to use the $1,480 in taxes which they owed for the payment of the first two quarters and that lessee was not in default at the time lessors so declared.

■ It is true that the amount of taxes tendered on December 17, which was refused, was slightly inadequate because it was the amount that would have been due had the discount been taken. However, no contention is made that the amount of the tender was inadequate, and the deficiency in the tender was not the basis for the rejection. It was rejected because a default for which there was no basis had been prematurely taken. Had the tender been refused because of inadequacy, the deficiency could have been made good. It is debatable whether any tender was necessary in the face of the lessor's previous wrongful declaration of termination of the lease because, thereafter, tender was obviously a useless act. It is our conclusion that defendant was not in default and no breach of the lease occurred.

Affirmed.