CARLISLE B. ROBERTS, Judge.
 

 Plaintiff appeals from the Department of Revenue’s Order No. VL 78-789, dated December 26, 1978. In that order, the department found that plaintiff was the owner of certain timber severed from lands belonging to defendants Whitlatch and Ostapkevich, and therefore concluded that plaintiff was liable for payment of Eastern Oregon timber severance taxes imposed for the quarters ending March 31 and June 30, 1976, pursuant to ORS 321.425 (1975 Replacement Part), 321.435 and 321.465. Plaintiff alleges that he acquired only a license to cut the timber, not title to the severed timber, and contends that the severance tax should be imposed upon defendants Whitlatch and Ostapkevich.
 

 
 *[177]
 
 Plaintiff harvested the subject timber pursuant to stumpage agreements entered into with the landowners Whitlatch and Ostapkevich. These agreements, substantially identical except for property descriptions, addresses and prices to be paid by buyer to seller, were dated January 5 and February 23, 1976, respectively. The text of the stumpage agreement between plaintiff and defendant Whitlatch read as follows:
 

 “STUMPAGE AGREEMENT
 

 THIS AGREEMENT made and entered into this 23rd day of February, 1976, by and between JERRY WHIT-LATCH, Party of the First Part, hereinafter referred to as 'Owner/ with HOWARD McCLUNG, Party of the Second Part, hereinafter referred to as 'Buyer/
 

 WITNESSETH:
 

 Owner is vested with fee title and has the right to cut timber upon approximately 255 acres. The land is located in Sections 14 and 23 of Township 34 South, Range 6 West, W.M., Klamath County, Oregon, including timber on a 30 foot right of way along the east boundary of the E
 
 %
 
 of the S.E. % Sec. 23. Buyer desires to commence logging operations upon the aforesaid property forthwith. Seller desires to sell all merchantable timber located thereon as hereinafter set forth.
 

 NOW THEREFORE IT IS AGREED:
 

 1. That buyer shall cut all merchantable pine, fir and timber located upon said lands. It is provided, however, that the Buyer shall not be required to cut timber that is not accessible or beyond the range of economical logging.
 

 2. The term of this agreement commences forthwith and shall terminate on December 31, 1976.
 

 3. The owner shall be paid by the ultimate timber buyer or mill at the time and manner herein set forth. All payments shall be made directly to Jerry Whitlatch, at Route 1, Box 552A, Klamath Falls, Ore.
 

 4. It is contemplated that all logs will be sold to Boise Cascade Corporation; however, the Buyer, upon notice to the Owner, shall have the right to market all logs to
 
 *[178]
 
 other designated mills. Before selling logs to other mills, the Buyer agrees to notify the Owner in writing and to obtain his approval.
 

 5. The Buyer agrees to make arrangements with all ultimate log purchasers for direct payment to the Owner for logs delivered.
 

 6. The Buyer agrees to pay the Owner
 

 Pine Grade 3,4,5,6 $ 50.00 Per M
 

 100.00 Per M Grade 2
 

 110.00 Per M Grade 1
 

 50.00 Per M White Fir
 

 65.00 Per M Douglas Fir
 

 for all logs as the logs are delivered to the mill. Payments shall be made to the Owner as aforesaid in accordance with the custom of the mill purchasing the logs. The parties understand that payments shall be made on the 5th of each month for logs delivered between the 16th and the end of the previous month. Payments shall be made for logs delivered between the first and 15th of each calendar month on the 20th day thereof.
 

 7. It is agreed that all logs shall be measured according to net mill scale as determined by the Southern Oregon Log Scaling and Grading Bureau by East Side Rule.
 

 8. The Owner reserves the right to cause any or all logs to be scaled by their agent or by an officer of the Public Weights and Measure Department of either state or county. The Owner reserves the right to scale logs wherever the same may be located.
 

 9. It is agreed that each log shall be branded by the Buyer so that the same can be identified wherever located.
 

 10. The Buyer, his employees, agents and representatives shall have full rights to ingress and egress over existing roads and rights of way; and he shall have the right to construct such additional roads as may be necessary or reasonable for conducting the logging operation.
 

 
 *[179]
 
 11. As each payment is made for logs hauled during the previous two-weeks period, the Buyer agrees to provide the Owner with duplicate copies of all scale tickets showing the quality and quantity of logs cut.
 

 12. The Buyer agrees to notify the Owner before starting the shipment of logs from the said premises.
 

 13. The Buyer agrees to comply with the Oregon State Forestry Practices Act and any other Federal or State regulations applicable or required.
 

 14. All logging operations shall be done in a good, efficient and logger-like manner by the Buyer. Buyer expressly assumes all responsibility for damages and injury that may result to person or property as a consequence of his logging, loading or other operations upon the premises described and to confine all cutting to existing property lines.
 

 15. The Buyer further agrees to keep all logs and the property free and clear of all claims, liens, attachments or other legal encumbrances, arising out of his operation.
 

 16. The Buyer agrees to keep all loading areas in a good and usable condition and to pile all slash that he accumulates on the landings so it may be burned.
 

 17. Time is of the essence of this Agreement. This Agreement shall automatically terminate and be of no further force or effect whatsoever in the event of any failure upon the part of the Buyer to cause payments to be made at the times and in the manner herein provided or for other material violations of this Agreement.
 

 18. The Owner agrees to notify the Buyer in writing of any violation of the provisions of this Agreement, and the Buyer shall have seven days from the date such notification is mailed to him at 8058 Rogue River Highway, Grants Pass, Oregon, within which to cure or correct any breach or violation of this Agreement. In the event that the Buyer should be in default in any way for more than seven (7) days after notice of breach, the Owner shall have the right to enter upon his premises and possess and sell all logs theretofor cut; but crediting the Buyer’s account for any payments or values received in excess of the sums payable to the Owner.
 

 
 *[180]
 
 19. In the event of any termination hereunder, Buyer agrees to execute all Agreements, Quit Claim Deeds, or other documents that may be deemed necessary by the Owner for the purpose of terminating this Agreement and returning clear title to the Owner.
 

 20. This Agreement shall bind the successors, heirs and assigns of all parties hereto.”
 

 At the outset, the court notes plaintiffs contention that he orally agreed with Ostapkevich and Whitlatch that the landowners would be responsbile for payment of the severance tax imposed by ORS 321.425 (referred to in Plaintiffs Brief, filed April 9, 1979). Under a strict reading of ORS 41.740 (the statutory parol evidence rule), evidence of that oral agreement would not be admissible, since the written stumpage agreement is deemed to contain all the terms of the agreement between the parties. However, the Oregon Supreme Court has construed ORS 41.740 liberally, treating the statute as a codification of the common law parol evidence rule. The court has recognized the various common law "exceptions” to the rule, even though such exceptions do not appear on the face of the statute.
 
 Hatley v. Stafford,
 
 284 Or 523, 526 nl, 537, 588 P2d 603, 605 nl, 610 (1978). Applying one common law exception, also recognized in 1 Restatement of Contracts 335, § 240 (1932), the alleged oral agreement between the parties in this case as to the severance tax liability would be admissible, since the oral agreement does not contradict any of the terms of the written contract. (No mention of severance tax liability appears in the written agreement.) Indeed, the alleged oral understanding "might naturally be made as an agreement separate” from that of the written stumpage agreement.
 
 Hatley, supra,
 
 284 Or at 527-528, 588 P2d at 605-606.
 

 This court need not resolve whether the alleged oral agreement is or is not admissible. The evidence fails to convince this court that there ever was such an agreement. Plaintiff argues that the understanding existed; defendants refute plaintiffs contention. This
 
 *[181]
 
 case was submitted solely on the basis of briefs and no stipulation of facts was filed with this court. Therefore, the court is unable to determine if plaintiffs contention, which is denied by the defendants, is true, there being no opportunity afforded to test the credibility of the witnesses. The court finds that no oral agreement existed concerning liability for the severance taxes. The issue of liability for tax must be decided, on the proper construction of the stumpage agreements and the relevant statutes, aided by the briefs submitted by counsel.
 

 The provisions establishing the Eastern Oregon severance tax are found in ORS 321.405 to 321.520, inclusive. The tax is imposed upon "[a]ll owners of timber in eastern Oregon” at a rate of five percent of "the immediate harvest value of merchantable quantities of timber harvested. * * *” ORS 321.425. An "owner,” for purposes of the severance tax provisions, is defined in ORS 321.405(5) as follows:
 

 "321.405 [Definitions for ORS 321.405 to 321.520.] As used in ORS 321.405 to 321.520, unless the context requires otherwise:
 

 * * * *
 

 "(5) 'Owner’ means any person holding title to harvested timber by virtue of:
 

 "(a) An instrument of conveyance;
 

 "(b) The harvesting of the timber; or
 

 "(c) The harvesting of the timber and payment therefor.”
 

 It is not easy to determine from the stumpage agreements precisely what property rights plaintiff acquired at the time that the contracts were executed. That determination has never been simple.
 
 See Franke v. Welch,
 
 254 Or 149, 151 nl, 458 P2d 441, 442 nl (1969). Some language in the agreements support plaintiffs contention that he acquired a mere license to cut the timber and, therefore, at no time owned the severed timber or was responsible for the severance tax. For example, the stumpage agreements refer to
 
 *[182]
 
 the landowners as "title” owners, and indicated that "buyer” (plaintiff) merely agreed to
 
 cut
 
 all merchantable timber, not that plaintiff agreed to
 
 purchase
 
 the timber. (Agreement,
 
 supra,
 
 par 1.) In addition, payment was to be made directly from the mill to the landowners for the severed timber that plaintiff delivered to the mill (par 5).
 

 On the other hand, more provisions support the landowners’ claims that the stumpage agreements were, in fact, a contract for the
 
 sale
 
 of the severed timber by the defendants to the plaintiff, and that plaintiff was legally responsible for the severance tax. The court agrees with the defendants that, since the contracts provided that the amount plaintiff agreed to pay the landowners was fixed (Agreement,
 
 supra,
 
 par 6), plaintiff received the "ownership benefit” of any changes in the market price of timber. Further, the agreement consistently refers to plaintiff as "buyer” and states that the landowners (defendants) desired to
 
 sell
 
 all merchantable timber on the subject property.
 

 In construing this somewhat ambiguous stumpage agreement, the court’s aim is to ascertain and enforce the intent of the parties to the contract. That intent is to be gathered from the face of the instrument. Where, as here, the contract is ambiguous, it should be construed in accord with established rules of construction.
 
 See Parker v. Harris Pine Mills, Inc.,
 
 206 Or 187, 197-198, 291 P2d 709, 714, 56 ALR2d 382, 393 (1955). One such rule is that a contract will be construed most strongly against the party drafting it.
 
 Giustina v. United States,
 
 190 F Supp 303, 308 (D Or 1960), 7 AFTR2d 381, 384;
 
 Russell v. Sealed Power Corp.,
 
 278 Or 243, 247, 563 P2d 712, 714 (1977). Another applicable rule of construction is that words in a writing are given their well-known legal meanings Tinless the context of the writing clearly requires a contrary use.
 
 Giustina, supra,
 
 190 F Supp at 308, 7 AFTR2d at 384.
 

 
 *[183]
 
 Following these rules, the court finds that the stumpage agreements conveyed to plaintiff an ownership interest in the severed timber upon execution of the agreement.
 

 The agreements clearly refer to plaintiff as the "buyer.” A buyer (or "purchaser”) is "one who, for a valuable consideration, acquires property or an interest in property. * * *”
 
 Giustina, supra,
 
 190 F Supp at 309, 7 AFTR2d at 385. Further, the agreements granted to plaintiff any ownership benefit of increases in the market price of timber, since the amount which plaintiff agreed to pay the owners was fixed, while log prices varied from day to day at the mill.
 

 Oregon case law is abundantly clear that the sale of timber, under an executory contract, amounts to a conveyance of an ownership interest in that timber.
 
 Willamette Valley Lumber Co. v. United States,
 
 252 F Supp 199, 204 (D Or 1966), 17 AFTR2d 418, 422.
 
 See Paullus v. Yarbrough et ux,
 
 219 Or 611, 347 P2d 620, 79 ALR2d 1222 (1959);
 
 Seguin et al. v. Maloney-Chambers,
 
 198 Or 272, 253 P2d 252, 256 P2d 514, 35 ALR2d 1412 (1953);
 
 Belt et ux. v. Matson et al.,
 
 120 Or 313, 252 P 80 (1927). Following the rationale of these cases, since the stumpage agreement constituted a sale of the timber to the plaintiff, plaintiff became the "owner” of that timber, as that status is defined in ORS 321.405(5)(a), as soon as each stumpage agreement was executed. Therefore, plaintiff became responsible as owner of the timber for the five percent severance tax imposed in ORS 321.425.
 

 Even if the stumpage agreements are not construed as contracts specifically drafted to sell timber, plaintiff would be responsible for the severance tax. If plaintiff acquired only a license to cut the timber, as he contends he did, he would still be the "owner” of the timber for purposes of ORS 321.425 and 321.405(5)(b). It is well established in Oregon case law that " '[t]imber severed from the soil under the provisions of a license or permit authorizing it, and before
 
 *[184]
 
 expiration or revocation of the license or permit, becomes the personal property of the licensee or purchaser, and he is vested with the rights incident to ownership of personal property. * * *’ ”
 
 Anderson et ux. v. Moothart,
 
 198 Or 354, 358, 256 P2d 257, 259 (1953).
 
 See Crahane et al v. Swan,
 
 212 Or 143, 159-160, 318 P2d 942, 950 (1957). Once the timber is severed under such a license, the license becomes "coupled with an interest” and is irrevocable during the license period.
 
 Paullus, supra,
 
 219 Or at 638, 347 P2d at 633, 79 ALR2d at 1239-1240.
 

 Plaintiff contends that "harvesting” does not occur merely by severing the stumpage because, pursuant to ORS 321.405(5)(b) and (c) (defining "owner”), read in conjunction with ORS 321.435(1), harvesting only occurs when the logs have been measured. ORS 321.435(1) provides:
 

 "(1) The tax levied under the provisions of ORS 321.405 to 321.520 shall be due and payable quarterly on or before the last day of October, January, April and July of each year for all timber harvested during the preceding calendar quarter commencing with the calendar quarter beginning July 1, 1962. Timber shall be considered harvested
 
 for purposes of this subsection
 
 at the time when in the ordinary course of business the quantity of timber harvested is first definitely determined. * * *” (Emphasis supplied.)
 

 Plaintiff argues that, since the quantity of timber severed pursuant to the stumpage agreements could not be "definitely determined” until delivered to the mill, plaintiff at no time was the "owner” of such timber under ORS 321.405(5)(b) and (c). Plaintiffs interpretation overlooks that portion of ORS 321.435(1) emphasized in the quotation above. The provision concerning when timber is to be considered harvested applies only to
 
 subsection (1)
 
 of ORS 321.435 which relates to the time the severance taxes must be paid. ORS 321.435(1) is not intended to define when a party shall be found to be the "owner” of timber; that determination is controlled by case law and the statutory language of ORS 321.405(5).
 

 
 *[185]
 
 The provision in the contracts that the mill receiving the severed logs was to make payment directly to the sellers of the agreed contractual price per thousand board feet of severed timber is obviously a security device and has no bearing on title.
 

 Plaintiff was the "owner” (as that term is defined in ORS 321.405(5)) of the subject severed timber and is responsible for payment of the Eastern Oregon severance taxes imposed by ORS 321.425. Defendant department’s Order No. VL 78-789 is sustained. Defendants are entitled to their costs.