Argued and submitted September 9, 1981, affirmed March 22,
reconsideration denied April 27,
petition for review denied June 9, 1982 (293 Or 235)

TAYLORS COFFEE SHOP, INC.,
*Appellant,*

*v.*

TAYLOR,
*Respondent.*

(No. 77-5133, CA 18966)

643 P2d 347

Terence J. Hammons, Eugene, argued the cause for appellant. With him on the briefs was Hammons & Jensen, Eugene.

Richard A. Roseta, Eugene, argued the cause for respondent. With him on the brief was Flinn, Brown & Roseta, Eugene.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Van Hoomissen, Judge.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff lessee brought this declaratory judgment proceeding against its lessor to determine the rights of the parties under a rent escalation clause in the lease. Lessee appeals from the trial court's decree interpreting the lease in favor of lessor, assigning as errors the court's finding that the escalation clause is ambiguous and admitting parol evidence of lessor's intended meaning of the escalation clause. We affirm.

Lessor had operated "Taylor's Coffee Shop," adjacent to the University of Oregon campus in Eugene, for several years. In September, 1969, he discontinued the coffee shop business and leased the premises to Art Stone. The lease did not contain a rent escalation clause. In 1971 the present lease was negotiated by lessor and Stone. Stone operated a tavern on the premises. He incorporated the business under the corporate name Taylor's Coffee Shop, Inc., and assigned the lease to the corporation. The present shareholders acquired all the stock of the corporation in 1972. The corporation presently holds lessee's interest in the premises.

The lease provided for a three-year term with two three-year renewal options. The lease provisions were to remain unchanged during the renewal periods, except that rent would change for each renewal period pursuant to an escalation clause. Lessee exercised its option to renew the lease in 1974, but the parties disagreed as to the proper rental amount under the escalation clause. Under protest, lessee paid the amount of increase demanded by lessor. Lessee sought to renegotiate the lease to lengthen the term in exchange for the higher rent. Nothing came of the negotiations by 1977, when lessee exercised its second option to renew. Again lessee paid, under protest, the rent demanded by lessor. Lessee then brought this proceeding.

The issue is the proper construction of the escalation clause, which reads:

"The rent for the additional three year period shall be increased or decreased by a percentage equal to the increase or decrease of the commercial price index published by the United States Bureau of Labor Statistics during the original three year term, that is to say, by averaging the increase or decrease of the commercial price index for the

three years immediately preceding the date the option hereby granted to renew, is exercised."

The threshold question is whether the clause is ambiguous, *i.e.,* whether the words have either no definite sense or have more than one, so that a reasonable person would have doubt as to their meaning. *Bartlam v. Tikka,* 50 Or App 217, 220-21, 622 P2d 1133, *rev den* 290 Or 853 (1981); *May v. Chicago Insurance Co.,* 260 Or 285, 293, 490 P2d 150 (1971); *Chambers v. School Dist. No. 40,* 22 Or App 463, 467, 540 P2d 1026, *rev den* (1975).

■    Whether or not the escalation clause is ambiguous, parol evidence is admissible to explain the circumstances under which the lease was made. This evidence cannot vary the terms of the written agreement, but it can place the judge "in the position of those whose language he is interpreting." ORS 42.220; *Welch v. U.S. Bancorp,* 286 Or 673, 690-92, 596 P2d 947 (1979); *Card v. Stirnweis,* 232 Or 123, 128-31, 374 P2d 472 (1962); *Baker County v. Huntington,* 46 Or 275, 278-79, 79 P 187 (1905).

■ ■    We therefore may examine the escalation clause with respect to lessor's purpose for the clause, which is to allow the rent to increase with inflation. Regardless of this background evidence, however, if the language of the escalation clause is clear, it is the court's duty to enforce that clear reading. As we stated in *Jones v. Kelley,* 48 Or App 395, 399-400, 616 P2d 1215 (1980): "The fact that the agreement may have been improvident from the standpoint of the defendant does not render it ambiguous or justify the construction placed upon the agreement by the trial court [in defendant's favor]. *Wheeler v. White Rock Bottling Co.,* 229 Or 360, 367-68, 366 P2d 527 (1961)." Because lessor drafted the lease and escalation clause, we construe the language most strongly against him and most favorably to lessee. *Russell v. Sealed Power Corp.,* 278 Or 243, 247, 563 P2d 712 (1977); *Hill v. Brown,* 282 Or 499, 502, 579 P2d 243 (1978). The primary concern in interpreting a lease is to arrive at the intent of the contracting parties. If the language is ambiguous, we do not necessarily resolve the conflict by simply adopting the interpretation urged by the party which did not draft the lease. Lessor's attorney drafted the lease after a joint conference with lessor and Art Stone. Art Stone was not available as a witness.

In the first assignment lessee contends that the escalation clause is unambiguous, contrary to the ruling of the trial court, and should be interpreted according to its clear language to give effect to all the provisions of the clause. Lessee notes that the first part of that clause states that the rent for the renewal period is to be increased by a percentage equal to the total increase in the commercial price index during the prior three-year period and argues that the applicable percentage figure is to be calculated consistent with the balance of the clause, *i.e.*, by averaging the total price index increase for the prior three-year period. Lessee illustrates this interpretation, using hypothetical figures: assume the base rent for the prior three years is $1,000 per month and that the price index increased by 30 percent over the base period. Lessee contends the 30 percent increase should be averaged and that average applied to the base monthly rental. Lessee uses this example: 30% ÷ 3 = 10%, 10% × $1,000 = $100 per month, plus the base rent of $1,000 equals $1,100. Lessee then states:

> "Total increase for the 'additional period' is then equal to the rent for the 'original' term plus the total percentage increase in the price index (original rent + 10% + 10% + 10% = original rent + 30%). This conforms to the first portion of the provision."

However, lessee is not mathematically correct. A 10 percent increase in the monthly rent paid over a period of three years is only a 10 percent increase, not a 30 percent increase. Lessee does not contend that the rent is to be increased 10 percent *annually* for three years. The lease provides that the rental amount is to remain constant during each of the three-year renewal periods.[1]

---

[1] In its reply brief lessee sets forth an additional method of calculating the rental increase. The suggested formula is to divide the total price index increase by 36, (the number of months in three years) and apply the multiplier to the base rent. To illustrate: assume a base rent of $1,000 and a total percentage increase in the price index of 36 percent; 36% ÷ 36 = 1%, 1% × $1,000 = $10, plus the base rent equals $1,010. Lessee's suggestion continues, "or by dividing by 3 getting the total rent for a year, and then dividing that figure by 12 for the monthly lease payment. Either method will obviously give an identical result." However, lessee's analysis does not survive mathematical scrutiny: using the same illustration, 36% ÷ 3 = 12%. Total base rent for a year $12,000 × 12% = $1,440, plus the base rent equals $13,440, and dividing by 12 equals $1,120 per month. The two results are not the same. A one percent increase for each of 36 months is not the same as a 12 percent increase over three years.

Lessor interpreted the escalation clause to mean that the *total* percentage increase was to be applied to the base monthly rental amount. The averaging formula in the latter part of the clause, lessor contends, was to be used in the event there was an increase *and* a decrease in the price index during the previous three-year term of the lease. In that event, he contends, the increase and decrease were to be averaged to arrive at a net increase over the three-year period. To illustrate, using the figures in lessee's first example: assume a base rent of $1,000 and an increase in the price index of 30 percent over the prior three years, the result would be $1,000 $\times$ 30 percent = $300, plus the base rent equals $1,300 per month.

■ We conclude the trial court was correct in determining that the escalation clause was ambiguous. It is susceptible of at least two reasonable interpretations. The first part of the clause clearly requires the rent to be increased by a percentage equal to the increase in the price index. Because the lease provided for monthly rental payments, it is logical to apply the percentage increase to the monthly amount. Standing alone, this provision appears clear. However, applying the second part of the escalation clause introduces an inconsistency. If the percentage increase in the price index is to be averaged according to one of the formulas suggested by lessee, then the rent will not be increased by a percentage equal to the price index increase over the prior three-year term. The purpose of the clause as expressed in the negotiations for the lease was to keep pace with inflation as reflected in the price index. A simple averaging of the three-year increase would not meet that goal. The averaging provision could reasonably be interpreted to apply only in the event there was a decrease and an increase in the price index during the three-year period. This interpretation would give effect to the first portion of the escalation clause and allow a consistent application of the second provision in limited circumstances.

Because the court properly determined that the clause was ambiguous, extrinsic evidence regarding the parties' intent was admissible to aid in determining the meaning of the language used.

In the second assignment lessee contends that, if the clause is ambiguous, the court erred in receiving evidence of the unexpressed intention of lessor in designing the escalation clause. We have difficulty reviewing this claim of error because of the procedure utilized at trial. The trial was to the court without a jury. Plaintiff contended the escalation clause was not ambiguous and objected to admission of any extrinsic evidence. The court said it would have to do some research and review the memoranda submitted by the parties. With the agreement of the parties, the court received the evidence over plaintiff's objection and reserved ruling on the objections pending a review of the memoranda. The court, however, did not rule on any objection but wrote a letter to the parties' counsel expressing its conclusion. The letter stated in relevant part:

"1.   The second paragraph of Paragraph No. 3 of the Lease dated September 1, 1971, is ambiguous.

"2.   Testimony reveals that the negotiations of the parties were to produce an 'escalator clause' that would increase the rent for the next succeeding three-year period by a percentage equal to the total percentage increase in the consumer price index during the last succeeding three-year period of the lease. In other words, the Court finds in conformance with the contention of the Defendant."

Lessor contends that because the court did not rule on lessee's objections they are not preserved for review. Lessee argues that the opinion letter indicates that the court in fact received and utilized the evidence in arriving at its decision and that it should be presumed that the court overruled all of the objections taken under advisement.

It is clear from the trial court's ruling that it relied on extrinsic evidence in interpreting the ambiguity in the lease. For the purposes of review we will assume that the court overruled the objections taken under advisement.

Lessee's objections to the testimony were based on two different grounds. The first ground was that no extrinsic evidence was admissible because the lease provision was not ambiguous. The second ground was that direct statements as to what lessor intended were inadmissible, even if the lease was ambiguous. Lessee concedes on appeal that, if the clause is deemed to be ambiguous, certain evidence was properly received. The principal objection was

to testimony to the effect that lessor wanted to protect himself against inflationary increases and that that was his intent in requesting the escalation clause. He also testified that he did not intend that the increase be averaged over the three-year period. Assuming that testimony to be inadmissible to explain the ambiguity, we nevertheless conclude that reversal is not required. Lessor's intent as expressed in his testimony and that of the attorney who drafted the lease was disclosed to Art Stone during the negotiations for the lease. The testimony indicates lessor told Stone that he wanted the rent to increase with inflation and that that was the purpose of the escalation clause. Stone asked what would happen if there were a decrease in the price index. They then decided on the averaging provision of the clause to meet that eventuality.

The expressed intention and discussion of the contracting parties during the negotiations are part of the circumstances surrounding the making of the agreement and are properly considered in resolving an ambiguity. *Card v. Stirnweis, supra.* The evidence of the contracting parties' negotiations placed the court in a position to understand what they were intending to cover by the language used and gave the court a basis for interpreting the language and resolving ambiguities.

Affirmed.