# IN THE OREGON TAX COURT

Kay C. VAN NATTA
and Robert P. Van Natta,
dba Van Natta Brothers

*v.*

## DEPARTMENT OF REVENUE

(TC 3076)

Robert P. Van Natta, Van Natta and Petersen, St. Helens, represented plaintiffs.

James C. Wallace, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for plaintiffs rendered December 5, 1991.

### CARL N. BYERS, Judge.

Plaintiffs appeal from assessments of additional Western Oregon Timber Severance Tax for 1987, 1988 and 1989. The parties stipulated the facts and agreed to submit the matter to the court on briefs.[1]

---

[1] Simultaneous briefs were to be submitted by August 19, 1991. Plaintiffs did not submit a brief.

The undisputed facts show that plaintiffs' father, George Van Natta, owns certain timberland. Plaintiffs operate a logging business as a partnership. Plaintiffs have logged timber owned by their father for approximately 20 years. During the three years in question, plaintiffs had written agreements with their father concerning the logging of the timber. One agreement covers both 1987 and 1988 and the other covers 1989. George Van Natta always regarded himself as the owner of the timber. He was shown as such on the harvesting permits filed with the State Forester. He reported the timber harvests and paid the timber severance taxes. As authorized by ORS 321.282(4), he elected to report and pay the tax on the net stumpage recovery only. However, after audit, defendant concluded that the written agreements were not for logging services but were for the sale of timber to plaintiffs. Defendant then assessed plaintiffs additional taxes and this appeal ensued.

ORS 321.277 imposes the severance tax on owners of timber. ORS 321.257(8) (1989 Replacement Part) states:

" 'Owner' means any individual or combination of individuals, partnership, firm, corporation or association of whatever nature holding title to harvested timber by virtue of:

"(a)   An instrument of conveyance;

"(b)   The harvesting of the timber; or

"(c)   The harvesting of the timber and payment therefor."

Also applicable here is ORS 321.257(4) which defines "harvest" as:

"[T]he point at which timber that has been cut, severed or removed for purposes of sale or use is first measured in the ordinary course of business as determined by reference to common practice in the timber industry."

In summary, whoever holds title to severed timber at the point it is first measured in the ordinary course of business is liable for the timber severance tax.

Defendant interprets the written agreements between plaintiffs and their father as for the sale of timber. Defendant, therefore, concludes that plaintiffs were the owners of the timber for purposes of taxation.

The agreements in question are relatively brief and do not address the question of ownership of the severed timber. The agreement in effect during 1987 and 1988 provides that plaintiffs are to "cut and market timber" on premises belonging to George Van Natta. Plaintiffs are to furnish all labor and equipment, build the roads and accomplish the logging in accordance with the plan of the parties. The agreement provides:

> "Loggers shall not only sell the material produced on the best market available, but they shall also transport it there. The stumpage to be paid to owner shall be 35 percent of the net sums received from the sale of materials produced."

The 1989 agreement is very similar in form and language except that it provides that plaintiffs will pay stumpage of $121 per thousand for common mill logs, $125.50 for export quality logs, 46 cents per lineal foot for pilings and poles and $9.45 per ton for chipping logs.

The central issue is whether these agreements are for "logging services" or whether they are agreements for the sale of stumpage. Defendant's opinion and order correctly suggests that these agreements are ambiguous. Plaintiffs' agreement to "cut and market" could be for either logging or sale. Both contracts refer to "stumpage" to be paid to the owner. Stumpage is a term that refers to the value of standing or uncut timber. Use of that term implies a purchase by plaintiffs.

Defendant believes the agreements are for a sale of the timber and cites the decision of this court in *McClung v. Dept. of Rev.*, 8 OTR 175 (1979), in support of its position. In that case the parties to the agreement disagreed on its interpretation. Although the plaintiff was designated as "buyer," he claimed only a right to cut the timber. The other party, designated as the "seller," claimed the agreement called for a sale of the severed timber. In interpreting the agreement, this court held that it provided for sale of the timber and plaintiff was liable for the severance taxes.

However, there is one great difference between this case and the *McClung* case. In this case, the parties to the agreements agree as to their intent and the meaning of the ambiguous agreements.

"If the court is convinced that it knows the purposes of the parties, the intended legal result, however vaguely expressed and poorly analyzed, it should be loath to adopt any interpretation of their language that would produce a different result." 3 Corbin on Contracts § 545 (1960).

Here, the parties agree that George Van Natta owned the timber and would be liable for the taxes. Although plaintiffs are not designated in the agreement by title, they are referred to as "loggers." Likewise, George Van Natta is referred to in the 1987-88 agreement as the "owner." Plaintiffs have conducted logging operations for their father for approximately 20 years. Their conduct during that time is consistent with their claims now. The family relationship and the long-term working relationship may have caused the parties to use a different kind of agreement than they would with outsiders.

■    Defendant points out that in *McClung* this court, citing higher authority, found that timber severed under a license or a permit becomes irrevocable and results in title being held by the licensee. However, that rule applies only if the agreement was for the sale of timber. The privilege to enter and cut the timber becomes irrevocable only if a party acquires an interest prior to severance. *Paullus v. Yarbrough,* 219 Or 611, 638, 347 P2d 620 (1960). If the agreement is for logging services only, no license will result in title passing to the logger.

■    Defendant relies on administrative rules of defendant designed to identify the responsible taxpayer. The court's determination that George Van Natta is the responsible taxpayer is not inconsistent with those rules. George Van Natta was designated as the "owner" on the Notification of Operations and owned the land from which the harvest occurred. *See* OAR 150-321.005(9). Even if the administrative rules were inconsistent, it would not change the court's conclusion. The statute clearly provides that the "owner" of the timber is responsible for the tax. In these circumstances, the agreements control who is the owner.

"The objective of interpretation in the general law of contracts is to carry out the understanding of the parties rather than to impose obligations on them contrary to their understanding: 'the courts do not make a contract for the parties.'

Ordinarily, therefore, the mutual understanding of the parties prevails even where the contractual term has been defined differently by statute or administrative regulation." Restatement (Second) Contracts § 201 comment c (1979).

■ Finally, defendant claims that the administrative rule, OAR 150-321.282(4)(b), which governs the conditions for making a Small Owner Election, should be applied retroactively. The court declines to do so. Aside from the fact that this was an issue not raised at the hearing, the rule is more than interpretative. It imposes requirements on the form and terms of agreements in order for those agreements to qualify for the election. The court will not apply these new requirements on preexisting agreements.

The court finds that defendant's Opinion and Order No. 90-2308 must be set aside. Costs to plaintiffs.