Decided 16 January, 1905.

## BAKER COUNTY v. HUNTINGTON.

79 Pac. 187.

PAROL EVIDENCE TO SHOW PURPOSE OF WRITING.

1. Where the language of a written instrument is ambiguous, equivocal, or susceptible of conflicting interpretations, it is competent to ascertain by parol evidence the purpose and object of the parties from the surrounding circumstances, and thereafter to enforce it in accordance with such intention.

PAROL EVIDENCE SHOWING PURPOSE OF A BOND BY A SHERIFF.

2. Parol evidence is competent to show the circumstances connected with the giving of a bond by a public officer in order to determine its nature and effect, as, for example, that a certain bond filed by a sheriff, who was ex officio tax collector, was intended to cover his special liability for tax money, although it purported to be his ordinary official undertaking.

RECORDS OF COUNTY COURT CONCERNING OFFICIAL BONDS.

3. While the county court should keep a record of the delivery and acceptance of sheriffs' bonds, and should regularly approve the bonds, and enter the approval upon the minutes and file the undertakings with the clerk, an omission to do these things is not fatal to an enforcement of such a bond, where it is actually given and accepted.

PAROL EVIDENCE OF ACCEPTANCE OF OFFICIAL BONDS.

4. While the record of the county court is the best evidence of the delivery and acceptance of a sheriff's bond, yet, where the proper foundation is laid, such delivery and acceptance may be shown by secondary parol testimony.

OFFICIAL BONDS—DELIVERY WITHOUT CONSENT OF SURETIES.

5. Sureties upon an official bond regular upon its face, who, after affixing their signatures thereto, give it into the possession and control of the principal, clothe him with apparent authority to make final delivery to the obligee or proper authorities; and, if the principal delivers it contrary to

an understanding with the sureties that it shall not be delivered until other persons shall have become obligated, the sureties are estopped to deny the validity of the bond, unless the obligee has accepted it with notice, actual or constructive, of the real conditions under which it was intrusted to the principal.

DELIVERY OF OFFICIAL BOND—SUSPICIOUS CIRCUMSTANCES.

6. Where the obligee of an official bond knows of, or has notice sufficient to put a reasonably prudent man upon inquiry concerning a violation of the condition under which it was delivered to the principal for final delivery, he cannot enforce it against the sureties.

IDEM.

7. In order that a defect on the face of an official bond shall operate as notice to the obligee of a condition affecting the right of the principal to deliver it, the defect must be one reasonably tending to cause a discovery of the real defect; otherwise there will not be imputed notice.

SEPARATE LIABILITY OF PRINCIPAL AND SURETIES THROUGH FAILURE OF PRINCIPAL TO SIGN THE BOND.

8. The sureties who have signed an official bond may render themselves liable though the principal has not signed the obligation.

SUSPICIOUS CIRCUMSTANCES APPARENT ON AN OFFICIAL BOND.

9. Where it appeared on the face of an official bond tendered for approval that the officer's name was not written in as the principal, that the name of only one of the six sureties who signed the instrument appeared in the body thereof, that the total of the amounts written after the names of the different sureties was only $7,000, whereas the requirement was a bond of $10,000, and two of the signing sureties had not justified, a reasonably prudent man would have inquired, and therefore the county was chargeable with constructive knowledge as to the authority of the officer to deliver the bond.

DEFECTIVE BONDS—PLEADING WANT OF AUTHORITY TO DELIVER.

10. An official bond fair on its face does not import notice of any agreement between the sureties and the principal concerning the delivery of such bond, and a defense based on such an agreement must be pleaded; but where the bond by its appearance puts the obligee on notice as to the authority to deliver, a defense of want of such authority need not be specially pleaded by the sureties.

APPEAL—SUFFICIENCY OF ASSIGNMENT OF ERROR.

11. An assignment of error that the trial court refuses to permit a sufficiently comprehensive cross-examination of appellant's witnesses relative to certain issues tendered by the pleadings, is sufficiently comprehensive, in an action on an official bond, the defense by the sureties being a delivery without authority, to present for review the question whether the bond was so defective on its face as to charge the obligee with knowledge of the actual authority of the principal as to delivery.

From Baker: ROBERT EAKIN, Judge.

Statement by MR. CHIEF JUSTICE WOLVERTON.

This is an action by Baker County against A. H. Huntington and others to recover upon an obligation alleged to be the sheriff's additional bond as tax collector for Baker County. The instrument is in the following form:

"Whereas, at an election held on the 4th day of June, 1900, A. H. Huntington was duly elected sheriff of the county of Baker, State of Oregon, we, A. L. Brown, —— and —— hereby undertake that if the said A. H. Huntington shall not

pay over according to law all money that may come into his
hands by virtue of such office, and otherwise well and faithfully
perform the duties of such office, that we, or either of us, will
pay to the State of Oregon the sum of Ten Thousand Dollars.

|                                              |         |
| -------------------------------------------- | ------- |
| For $1,000.00, A. L. Brown.                  | [Seal.] |
| For $2,000.00, James Fleetwood.              | [Seal.] |
| For $1,000.00, D. Cartwright.                | [Seal.] |
| For $1,000.00, Harry A. Duffy.               | [Seal.] |
| For $1,000.00, J. T. Fyfer.                  | [Seal.] |
| For $1,000.00, J. W. Insenhofer.             | [Seal.]" |

It appears from accompanying certificates that Duffy, Fyfer,
Cartwright, and Insenhofer justified, but not so with Fleetwood
and Brown. It is alleged that Huntington delivered the writing
obligatory to the county court of Baker County as and for his
additional bond as sheriff and ex officio tax collector of that
county, and that the same was duly accepted by the court. Then
follow allegations of the collection by Huntington of certain
taxes, and defalcation for a larger sum than that named in the
bond. All the defendants demurred jointly, except Duffy, who
seems to have made no appearance, on the ground that the com-
plaint does not state facts sufficient to constitute a cause of
action, which demurrer being overruled, they answered, and, the
judgment after trial being adverse, now prosecute this appeal.

REVERSED.

For appellants there was a brief and an oral argument by *Mr.
William Smith.*

For respondent there was a brief over the names of *Thomas
Gabbert Greene* and *White & Winfree,* with an oral argument
by *Mr. Greene* and *Mr. Samuel White.*

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

The first question presented, which arises both on the demurrer
to the complaint and on the introduction of testimony touching
the purpose of the instrument, is whether the bond can be con-
strued or shown to have been given as the sheriff's additional
bond to cover his duties and obligations as tax collector of the
county. It is well settled in this State that prior to the act of
1901 (Laws 1901, p. 245) a sheriff's ordinary bond did not cover
his special duties as tax collector, and therefore would not

answer for defalcations arising from a failure to pay over tax moneys collected by him in his official capacity: *Columbia County* v. *Massie,* 31 Or. 292 (48 Pac. 694) ; *Multnomah County* v. *Kelly,* 37 Or. 1 (60 Pac. 202). The official undertaking of a sheriff at the time the transactions herein involved were had was required to be given in a certain form prescribed by the statute, to be approved by the county court and filed with the clerk, in the execution whereof the sureties must have justified before the county court: Hill's Ann. Laws, §§ 2390, 2392, 2395. By Section 2793 the sheriff of each county was made the tax collector thereof, but by the succeeding section (2794) he was required, before entering upon the duties of collecting taxes, to execute an additional bond in such sum as the county court of the county might determine. There seems to be no special provision as to how or before whom the sureties shall justify, nor is there any direction that the bond shall have been approved by the county court or filed with the county clerk, as is the case with the undertaking first mentioned. The subject is treated of under a different title, and the provisions pertaining to the sheriff's ordinary undertaking are not made especially applicable to the execution of the additional bond. The practice, however, of following such provisions, would be a most wholesome one to adopt, and is probably the rule generally. Now, the bond in question is substantially in the statutory form of a sheriff's official undertaking, the word "faithfully" being omitted at one place, and presumptively it is his ordinary undertaking; but it is alleged to be his additional bond to insure the faithful performance of his duties as tax collector. Can this be shown by parol? If so, the action will lie; otherwise not. A sheriff is known by no other title while collecting taxes; such duties being additionally enjoined upon him, and are performed by virtue of his office as sheriff. In other words, he is made ex officio tax collector of his county, for the faithful performance of which ex officio duties he is required to give what the law denominates an additional bond. Nothing else is prescribed. No form and no special provisions are directed to be observed.

1. It is a rule of law that where the language of a written instrument is ambiguous, equivocal, or susceptible of conflicting

interpretations, it is competent to ascertain the intention of the parties thereto from the facts and circumstances which induced its execution, and thereafter to enforce it in accordance with such intention, and such facts and circumstances may be shown by parol. It is not the office of parol evidence in such case to alter the language of the instrument, but to ascertain and determine the purposes to which the parties intended to apply it. The rule is of application as it respects the subject-matter or thing about which the parties have dealt. It sometimes happens, for the purpose of ascertaining what was in the minds of the parties, that it is necessary to resort to extrinsic parol proof; and this may be done, not for the purpose of altering the terms of the writing by words of mouth passing at the time, but as a part of the conduct of the parties, in order to determine what was the scope and object of the intended contract, and to fill up the instrument where it is silent. "Having done that," says Mr. Bradner in his valuable work on Evidence (2 ed.), 274, "the court can turn to the language of the instrument to see if that language is capable of being construed so as to carry into effect that which appears to have been really the intent of both parties." See, also, *Heffield* v. *Meadows,* L. R. 4 C. P. 595; *Henry Mc-Shane Co.* v. *Padian* (Com. Pl.), 20 N. Y. Supp. 679.

2. The bond, by its terms, applies alike to the ordinary duties of a sheriff, and to his special duties as tax collector. They are both official duties, and the moneys coming into his hands in the latter capacity come by virtue of his office: Murfree, Sheriffs, §§ 46, 48, 51; *Lane* v. *Coos County,* 10 Or. 123. So that the expressions, "all money that may come into his hands by virtue of his office," and "otherwise well and faithfully perform the duties of such office," become equivocal and susceptible of different interpretations; and the case, it seems to us, is a proper one for solution by the admission of parol evidence to show the circumstances attending the transaction, and the subject-matter which the parties had in mind when they entered into the pending relationship. If it had been somehow written in the instrument, characterizing it as an additional bond, the application of the condition employed would have been rendered perfectly plain. They could not then have been applied to the

ordinary duties of a sheriff, simply because it would be an additional bond, and not the official bond of that officer. So it would have been if the bond had been given for the faithful payment of the money which might come into his hands by virtue of his office as ex officio tax collector, or for the performance of his duty in that capacity—there would be no room for interpretation; but in its present form the bond might just as well apply to one condition as to the other, and it needs only the evidence of the facts and circumstances under which it was executed to determine the intention of the parties, and thus to make the proper application. The complaint is therefore sufficient, and parol evidence was properly admitted of the circumstances and conditions under which it was executed, as tending to express the purposes for which it was given.

3. Another objection is made to parol proof of the delivery to and acceptance of the bond by the county court, it being maintained that such delivery and acceptance can only be shown by the record of the court. Unquestionably a court should keep a record of all such transactions, and should regularly approve all bonds, and have its approval entered upon the minutes and the undertakings filed with the clerk; but an omission to do these things, or a part of them, is not fatal to an enforcement of the obligation, if actually given and accepted.

4. In the absence of a record of the transaction, it is competent to show what was done by parol. The record is considered the best evidence, if it exists, and parol testimony is secondary; and, as preliminary to the introduction of the latter, a proper foundation should first be laid therefor, but when laid, such testimony is competent: *Stout* v. *Yamhill County,* 31 Or. 314 (51 Pac. 442). This was a case against a county, but the rule is applicable in either alternative: Tiedeman, Munic. Corp. § 108. The objection is therefore not well assigned.

Other questions arise upon the refusal of the court to permit defendants' counsel to cross-examine plaintiff's witnesses touching the delivery by the defendants to plaintiff, and acceptance by it, of the bond in question, or to permit defendants to offer original evidence upon the subject, and its refusal also to permit

defendants to explain the purposes for which the bond was executed. It follows, naturally, as a corollary from what has been said, that defendants were entitled to the privilege of showing by parol the purpose for which the bond was executed. This is what plaintiff's counsel is contending for upon its part, and, if it is proper for it to show by the attendant circumstances and conditions the object intended to be subserved by the parties to the instrument, it was equally competent for ·defendants to testify upon the same subject, and to show, if such was the case, that the bond was not executed for the purposes as alleged by the plaintiff. As to whether the undertaking in question was an additional bond, there is the allegation on the part of the plaintiff that it was so given. This is denied by defendants, and raises the issue. Any proof that the writing was given as a sheriff's ordinary bond would refute the allegation, and was proper to be admitted. It was error, therefore, not to allow it.

5. Upon the first mentioned question, it seems to be the theory of counsel for plaintiff that, under the conditions appearing, the sureties made Huntington their agent for the delivery of the bond in question, and are now estopped by his acts to show the contrary. Recurring again to the pleadings, it will be seen that plaintiff has alleged that the defendants, as sureties, made and executed the bond in question, and delivered it to Huntington, and that Huntington on the 5th day of December delivered the same to the county court for Baker County, and that said body accepted it as their obligation for ''the purposes stated. This was denied by the answer of the sureties, which presented two issues: First, whether the bond was in fact fully executed by the sureties and delivered to Huntington; and, second, whether Huntington delivered the same to the county court as their bond, and also whether it was accepted as such by plaintiff. Plaintiff had the laboring oar and it was incumbent upon it to substantiate the affirmative of these issues or fail. Huntington must have been clothed with authority from the sureties, real or apparent, to deliver the bond, as a completed instrument, or his disposition of it could not bind them. Plaintiff relies upon his apparent authority, evidenced by having the bond in his possession, and dealing with it as if he was empowered to make the delivery, and

thereby consummate the obligation, as between the sureties and the county. The rule of law is well settled that the sureties upon an official bond, regular upon its face, by the act of intrusting its possession and control with the principal after having affixed their signatures thereto, clothe him with apparent authority to make the final delivery to the obligee or the proper authorities whose function it is to accept it on the part of the public; and if, under such conditions, the principal deliver it contrary to an agreement or understanding that other persons should also have become obligated, the sureties are nevertheless bound, on the principle of estoppel, as having by their acts misled the obligee to his detriment, unless the obligee has accepted the obligation with notice, actual or constructive, of the real conditions under which the bond was primarily intrusted to the principal: *Dair* y. *United States,* 83 U. S. (16 Wall.) 1 (21 L. Ed. 491); *King County* v. *Ferry,* 5, Wash. 536 (32 Pac. 538, 19 L. R. A. 500, 34 Am. St. Rep. 880); *Cutler* v. *Roberts,* 7 Neb. 4 (29 Am. Rep. 4); *State* v. *Peck,* 53 Me. 284. It was said in the last case cited (the court quoting from Chancellor Kent) that "whoever deals with an agent constituted for a special purpose deals at his peril, when the agent passes the precise limits of his power, though, if he pursues the power as exhibited to the public, his principal is bound, even if private instructions had still further limited the special power." Such is almost the universal holding of the later American cases, and the doctrine is now too firmly established to admit of cavil or debate. See further, Mechem, Public Officers, § 279; *Smith* v. *Board of Supervisors,* 59 Ill. 412; *Chicago* v. *Gage,* 95 Ill. 593 (35 Am. Rep. 182); *Ward* v. *Churn,* 18 Grat. 801 (98 Am. Dec. 749).

6. If, however, upon the other hand, "the person seeking the enforcement of the bond knew, or had, either from the face of the bond or from any other source, notice sufficient to have put him, as a reasonably prudent man, upon inquiry which would have disclosed the facts, he cannot enforce it against the sureties in violation of the condition": Mechem, Public Officers, § 279. So, it was said in *Ward* v. *Churn,* 18 Grat. 801 (98 Am. Dec. 749): "But the rights of the obligors are several and distinct,

and neither is bound except so far as he has consented to be. Neither is bound without a delivery of the instrument, and one obligor has no right to deliver it for another without his authority. And besides, the obligee who receives the instrument from one of the obligors, which is apparently perfect, has a right to presume that all the obligors have authorized its delivery, but he has not the same right to make that presumption when the instrument, on its face, is incomplete and imperfect." In *King County* v. *Ferry,* 5 Wash. 536 (19 L. R. A. 500, 34 Am. St. Rep. 880, 32 Pac. 538), this principle is considered by the learned chief justice, where he reviews a number of authorities to the same purpose. He says: "Of course, if there is anything on the face of the bond when it is delivered to excite the suspicion of the obligee that the bond has been tampered with, or sufficient to put a prudent person on his guard, he ought to be held bound to make an investigation before accepting the bond." So, in Murfree, Official Bonds (section 53), the author says: "It is the duty of officers intrusted with the authority to take and approve official bonds to use ordinary care and prudence to protect the security, as well as to see, in the interest of the public, that the bond is valid and the securities sufficient. Whenever such facts occur as should put the officer upon inquiry as to the due and legal execution of a bond, he must make that inquiry."

In conformity with the rule thus ascertained and promulgated, a surety who signed an appeal bond and intrusted it to the principal on condition that it should also be signed by another, whose name appeared in the body of the bond as co-surety, the principal not having procured such additional signature, and having erased the name from the body, which erasure appeared upon the face of the instrument, it was held that the surety was not liable, on the ground that the obligee was put upon his inquiry: *Allen* v. *Marney,* 165 Ind. 398 (32 Am. Rep. 73). So, in *Nagle* v. *Stroh,* 4 Watts, 124 (28 Am. Dec. 695), where the bond contained in the body the names of two sureties, but was signed by one only, it was held that the obligee could not enforce it unless he was able to show that the surety signing it, knowing the other had not so signed, had agreed to become liable alone. So, the court say in *Dair* v. *United States,* 83 U. S. (16 Wall.) 1 (21 L. Ed.

491), where the principal rule is announced and applied: "If the name of Joseph Cloud appeared as a co-surety on the face of this bond, the estoppel would not apply, for the reason that the incompleteness of the instrument would have been brought to the notice of the agent of the government, who would have been put on inquiry to ascertain why Cloud did not execute it, and the pursuit of this inquiry would have disclosed to him the exact condition of things." Many cases announce a like principle: *McCramer* v. *Thompson*, 21 Iowa, 244; *State* v. *Craig*, 58 Iowa, 238 (12 N. W. 301); *Hagler* v. *State*, 31 Neb. 144 (47 N. W. 692, 28 Am. St. Rep. 514); *Fletcher* v. *Austin*, 11 Vt. 447 (34 Am. Dec. 698); *Ward* v. *Churn*, 18 Grat. 801 (98 Am. Dec. 749).

7. It goes without saying that a defect appearing on the face of a bond must be of such a nature as might reasonably lead to notice of the real defect complained of; otherwise it could not serve to impute notice: *Chicago* v. *Gage*, 95 Ill. 618 (35 Am. Rep. 182). So the court held in that case that the mere fact that the obligee in the bond had knowledge at the time he received it that there were blanks in the instrument, which had been filled in subsequent to the signing of the sureties, and in their absence, did not impute to such obligee notice of any secret conditions upon which the sureties may have signed.

8. The case at bar, however, presents a very different state of affairs. It is apparent from a glance at the bond in question that the name of the principal was neither incorporated in it, nor affixed to the instrument in a manner indicating that it was intended that he should be bound thereby. This in itself is not a serious objection, however, for the reason that it was competent for the sureties to bind themselves without joining the principal: *St. Louis Brewing Assoc.* v. *Hayes*, 97 Fed. 859 (38 C. C. A. 449).

9. It was a matter, nevertheless, that was proper to be considered in connection with all the other conditions appearing upon the face of the instrument, apposite to impute notice to the county that it was not a completed instrument, and that Huntington was not authorized to deliver it to become effective as against the sureties who had then affixed their signatures. Beyond this, these things were also at once manifest from a

mere inspection: First, that only one name of the six sureties signing was written in the body of the instrument; second, that the minutes or entries made opposite the signatures of the sureties showed that they had signed in the aggregate for only $7,000, whereas the bond called for $10,000; and, third, that two of the sureties signing had not as yet justified as is usual in such cases. These infirmities upon the face of the instrument were ample to have put the county upon inquiry as to Huntington's authority from the sureties to deliver it as a completed obligation for the purposes alleged, and the question of estoppel has no place in the inquiry. It thus became a question of fact for the jury to determine from the evidence whether, in reality, Huntington was given authority—not whether he had apparent authority, as the bond on its face refutes that—from the sureties signing to deliver this bond to the county court as their act and deed.

10. In this view, it is not an insuperable objection that the defendants had not pleaded that the plaintiff took the bond with knowledge or notice of an understanding between the sureties and the sheriff that it should not have been delivered until others had signed. If, however, the bond had been fair on its face, imparting no notice to excite inquiry that, if followed up, would have led to information of an adverse understanding between the sureties and the principal, then most assuredly there should have been an affirmative defense showing that notwithstanding the bond imparted no notice, yet that in fact an infirmity as to the apparent authority of the principal really existed, of which the county court had extraneous notice and knowledge, and hence that it could not insist upon any binding effect of the undertaking as against the sureties.

11. Another question is suggested, which is that the plaintiff made no offer in connection with the questions put to Cartwright showing what was expected to be proven by the witness, and therefore that the error is not well assigned; but, if this be conceded, the questions last discussed are sufficiently presented by the refusal to permit defendants a full cross-examination of plaintiff's witnesses relative to the issues under the pleadings, seeing that the case was tried upon an erroneous theory.

The judgment of the circuit court will be reversed, and the cause remanded for such further proceedings as may seem proper.

REVERSED.