Argued and submitted May 13, 1983, reversed and remanded with instructions, reconsideration denied August 24, 1984, petition for review dismissed June 17, 1985
(299 Or 314)

SCHOOL DISTRICT 129J et al,
*Respondents,*

*v.*

FOSDICK et al,
*Appellants.*

(81-0192; CA A24837)

681 P2d 1167

Jackson L. Frost, Linn County District Attorney, Albany, argued the cause for appellants. With him on the briefs were Robert A. Ford, and Bromley & Ford, Eugene.

William G. Paulus, Salem, argued the cause for respondents. With him on the brief was Paulus & Callaghan, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

## YOUNG, J.

In this mandamus action, plaintiffs seek to compel defendants to distribute revenue from certain forest land pursuant to a statutory formula first established in 1941.[1] ORS 530.110 - ORS 530.115. The revenue at issue is derived from land which defendant Linn County originally acquired through tax foreclosure and conveyed to the state in 1939. The trial court, relying on circumstantial evidence, ruled that Linn County had elected to follow the 1941 formula and ordered that a peremptory writ of mandamus issue, directing defendant Downing to disburse the funds at issue currently in her possession to plaintiffs and other eligible taxing districts in accordance with ORS 530.110 and ORS 530.115. Defendants appeal. We reverse.

In 1939, legislation was enacted to facilitate the reforestation and management of forest lands. The legislation enabled counties to convey to the State Board of Forestry certain lands acquired by the counties "through foreclosure of tax liens or otherwise." Or Laws 1939, ch 478, § 5 (OCLA 107-305; comparable provision now codified as ORS 530.030). The act provided that, in consideration for the conveyance, the state would deduct certain expenses associated with the land, retain 10 percent of the remainder and "all remaining balances" (90 percent) would be paid annually "to the county in which the lands are situated." Or Laws 1939, ch 478, § 6 (OCLA 107-306). In 1941, certain portions of the 1939 Act were repealed, and a new distribution formula was enacted. Or Laws 1941, ch 236, § 9(1) (OCLA 107-308b). Under that formula, the state was no longer entitled to deduct its expenses, but it could take 5 cents per acre per annum for credit to the State Forest Patrol account. The balance of the revenue was apportioned, with the state retaining 25 percent and the remaining 75 percent being paid to the county, "and shall be by said county prorated and apportioned as the same would have been had the lands from which said revenues are derived been sold by said county."

The 1941 Act provided that the distribution of revenue from land conveyed under the 1939 Act would continue to

[1] The 1941 formula has been modified several times. When we refer to the "1941 formula," we refer to the formula in effect at the time of distribution.

be governed by the 1939 formula, unless the conveying county should elect "by resolution duly made and entered" to come under the 1941 formula. Or Laws 1941, ch 236, § 12 (OCLA 107-308e). That exception has continued. Or Laws 1945, ch 154, § 11 (OCLA 107-301k); ORS 530.170.

Although the 1939 and 1941 Acts have been amended a number of times, the basic statutory scheme remains intact. ORS 530.110 and ORS 530.115 provide the formulas for the distribution of revenues from 1941 lands and from 1939 lands for which the county has elected to come under the 1941 Act. ORS 530.110 provides the formula for determining the county's share of the gross revenues. ORS 530.115(1) governs the disposition of a county's share. The county retains not less than 10 percent for expenses. Twenty-five percent of the remainder is paid to the county school fund, and the remainder is "prorated and apportioned to the various taxing districts" in the county according to the proportion that a given district's rate of tax levy bears to the total rate of tax levy by all districts in a given year. It is the latter money which the county has withheld from plaintiffs.

Linn County conveyed approximately 18,530 acres to the state under the 1939 Act. The state paid the county its first revenue from those lands in 1945, apparently following the 1941 formula. From 1945 until 1980, the county apportioned all revenue it received among the various taxing districts pursuant to that formula. In January, 1980, defendant Downing, the county treasurer, acting pursuant to legal advice, withheld distribution of the revenue to plaintiffs and other taxing districts. That decision was the result of the county's inability to locate a resolution or order reflecting a county election that the revenue from the 1939 land be governed by the 1941 formula.

The dispositive issue is whether there is evidence from which the trial court could find that plaintiffs proved by a preponderance of the evidence that Linn County made an election under ORS 530.170, or its predecessors, for the distribution of revenue from the 1939 lands under the 1941 formula. If there is not, defendants have not violated their duties in refusing to distribute the funds.

■      The scope of our review in a mandamus action is as in an action at law. Accordingly, we determine only whether

the trial court's findings are supported by the evidence. ORS 34.240. *Kirschbaum v. Abraham,* 267 Or 353, 355, 517 P2d 272 (1973); *Cook v. Clackamas County,* 50 Or App 75, 79, 622 P2d 1107 (1981). The trial court found:

"The Court is satisfied and finds that the questioned resolution was adopted by the Linn County court and did exist at one time. The factors that the Court finds most compelling in reaching this decision are as follows: (1) The concerted effort made by the Department of Forestry to obtain resolutions from all of the counties involved in the 1939 lands; (2) The failure to obtain a resolution for such a large portion of the 1939 lands would have been very significant and well-known within the Department; (3) The failure to obtain the resolution would also have required separate accounting methods by the Department, and would have been a source of concern, and continuing indication of the lack of a resolution; (4) The initial disbursements were made by the Department and accepted by the County as if there had been a resolution, and all subsequent disbursements have been made in this manner; and (5) The practice of treating the disbursements as if there had been a resolution was not questioned by either party for approximately thirty-five years.

"The above factors outweigh the failure to find a resolution in either the County Court records or the Department of Forestry. * * *"

The trial court properly focused on whether the county had adopted a resolution to bring its revenue from 1939 lands under the 1941 formula. ORS 530.170 provides:

"Revenues from lands acquired by the state pursuant to section 5, chapter 478, Oregon Laws 1939, shall be disposed of as provided by the law at the time of such acquisition; provided that the county court or board of county commissioners of any county from which such lands were acquired may, by resolution duly made and entered, and delivery of a certified copy thereof to the [State Board of Forestry], elect to have such revenues disposed of as provided in ORS 530.110(1)."

This statute is substantially identical to those in effect since 1941. OCLA 107-308e; OCLA 107-301k. Defendants argue that the statute contains a number of requirements for a valid election to be governed by the 1941 formula. We need not determine whether each of the requirements is essential. What *is* essential is that there be a resolution by the county

governing body. Despite several extensive and thorough searches of the county records and the files of the State Board of Forestry, no resolution was ever found. Plaintiffs asked the trial court to infer the existence of the resolution from evidence of later state and county actions. The trial court accepted plaintiffs' argument and drew the inferences that they requested. In doing so a crucial step was missed, for there was no foundation to make evidence of later actions relevant to the issue in this case. Evidence of later actions would be relevant to fill a gap in existing records; here there is no gap and nothing to fill.

■   OCLA 93-307 required that all proceedings of county courts relating to county business "shall be entered and kept in separate books." In Linn County those books were the Commissioners' Journals.[2] Several witnesses carefully examined the journals and found no resolution; more significantly, they found no sign that anything was missing from the journals or that they were defective in any other way. Mr. McWade of the State Forestry Department testified:

> "[Defendants' attorney]: Did you find the Linn County records contained in the Clerk's Office to be in consecutive bound volumes that were in order numerically by page?
>
> "A.   Yes. Apparently the Court didn't enter a daily Journal, that there were several days in between, but there was not a daily entry. Every time the Court met to conduct business, it was in there, I believe, I can't say, you know. I have some information — I noticed in one volume, as an example, I would find something like Book 25 from July 2nd '39 to November 20th, 1940, and the next entry in Book 26 the first entry occurred on November 26th, 1940, and went to March the 10th and then a gap again in the next Book from the 10th to the 12th and so on, and so there are four or five or six days maybe without an entry and I found that to be true all through the Book. It looked like maybe the Court met weekly during that period of time."

■   Because there are no missing pages or chronological gaps in the records, there is no time period during which the

---

[2] OEC 311(1)(j) creates a presumption that "[o]fficial duty has been regularly performed." The official duty here was to enter *all* proceedings of the Linn County Court in its books; the presumption is that the duty has been performed. The presumption shifts the burden to plaintiffs to show that it is more probable than not that all proceedings were *not* entered in the journals. OEC 308. Plaintiffs provided no evidence from which the trial court could conclude that they carried that burden.

county could have adopted the missing resolution unless the records are otherwise defective. The journals are not conclusive if there is other evidence that the record is not complete - for instance, if someone who was present at a meeting testifies to actions not included in the record. *Stout v. Yamhill County,* 31 Or 314, 319-20, 51 P 442 (1897). They may also be supplemented by evidence of the total omission of a transaction from the record, if that evidence also affirmatively shows that the transaction occurred.

> "In the absence of a record of a transaction, it is competent to show what was done by parol. The record is considered the best evidence, if it exists, and parol testimony is secondary; and, *as a preliminary to the introduction of the latter, a proper foundation should first be laid therefor,* but when laid, such testimony is competent[.]" (Emphasis supplied.) *Baker County v. Huntington,* 46 Or 275, 280, 79 P 187 (1905).

In *Stout* the record reflected a contract; extrinsic evidence expanded on the record and showed some of its terms. In *Baker County* the county had a bond in its possession; extrinsic evidence was offered to prove delivery and acceptance. The record itself provided a foundation for the extrinsic evidence in each case, and there was direct testimony of what occurred at the County Court's meetings. The court could affirmatively say that the record was incomplete.

Plaintiffs' dilemma in the present case is that there is no evidence of a defect in the county records. The records are complete on their face, and plaintiffs produced no evidence to challenge that facial completeness. Evidence of later actions would be relevant to permit the trial court to draw inferences to fill a gap in the record, but that evidence cannot create the gap. Because there is nothing to explain, the evidence on which the trial court relied is irrelevant to the case, and there is no relevant evidence supporting the trial court's judgment.

Reversed and remanded with instructions to quash the peremptory writ of mandamus.