Argued and submitted June 28, judgment affirmed in part and vacated in part September 25, reconsideration denied November 8, 1985, petition for review allowed January 22, 1986 (300 Or 477)

TILLAMOOK COUNTY et al,
*Respondents,*

*v.*

STATE OF OREGON, acting by and through
STATE BOARD OF FORESTRY et al,
*Appellants.*

(135,593; CA A32152)

707 P2d 585

Michael D. Reynolds, Assistant Attorney General, Salem, argued the cause for appellants. With him on the briefs were Dave Frohnmayer, Attorney General, William F. Gary, Deputy Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Malcolm F. Marsh, Salem, argued the cause for respondents. With him on the brief was Clark, Marsh, Lindauer & McClinton, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff counties brought this declaratory judgment action seeking, through their first claim, a declaration that the "costs" they are required to reimburse to the state[1] under ORS 530.115(2) do not include an interest component. In their second and third claims they sought a declaration that ORS 530.010 to 530.170 and their predecessors, pursuant to which the counties had transferred forest lands to the state, establish contractual and trust relationships between the state and the counties. Plaintiffs argue that those relationships preclude the state from making "unilateral" changes in the statutory formula for distribution between itself and the counties of revenues derived from the forest lands and from making any other statutory changes that affect the contract or trust unless the counties agree to the amendments.[2] The trial court ruled in the counties' favor on both issues, and the state appeals. We affirm the judgment in part and vacate it in part.

In 1948, the voters adopted Article XI-E of the state constitution, authorizing the issuance of general obligation bonds "to provide funds for forest rehabilitation and reforestation and for the acquisition, management, and development of lands for such purposes." The following year, the legislature adopted implementing legislation, Oregon Laws 1949, chapter 102, that has been amended periodically since that time and is now codified at ORS 530.210 to 530.290. Section 8 of the 1949 Act created a sinking fund, to be derived from specified sources, "to provide for the payment of the principal and interest" due on the bonds. *See* ORS 530.280. For a variety of reasons, the sinking fund was not adequate to retire the bonded debt, and the state transferred general fund

---

[1] We refer to defendants collectively as "the state."

[2] The contract and trust theories, and the concomitant assertions regarding unilateral action by the state, were stated separately as the counties' second and third claims. Certain contentions, besides those we have described, were set forth in those claims. *See* note 5, *infra.* However, as we understand the parties, their arguments *here* pertain only to the issues we have described in the text. The only *specific* question relating to a statutory change that the parties dispute in their briefs is whether the state may change the distribution formula. Although we have restricted our discussion of the "unilateral change" issue to that specific question, our analysis is equally applicable to any other contentions the counties made below or implicitly make here that involve statutory amendments or other subsequent legislative action. *See* Or Laws 1979, ch 792.

revenue to the sinking fund. Consequently, ORS 530.115(2) was enacted:

> "After payment of the principal and interest of each bond issue issued pursuant to ORS 530.210 to 530.290, 20 percent of the moneys derived from forest products created through expenditures of moneys available from such bond issue shall be credited to the General Fund until the state is reimbursed for its costs under the bond issue in that county. However, the governing body of the county in its discretion may authorize a higher percentage of that county's allocation for any year to be so credited to the General Fund."

■ The state argues that the "costs" that must be reimbursed include the interest that could have been earned on the general fund monies if they had remained in and had been invested as part of the general fund. The counties argue that the statute does not contemplate the inclusion of interest in those costs. The state relies on 41 Op Atty Gen 173 (1980), definitions of the word "costs" from various sources, legislative history and linguistic and policy arguments. The counties rely on similar arguments, but they also rely on one aspect of the "plain meaning rule" of statutory construction, *e.g.,* that the courts cannot add to statutes what the legislature has not included in them. *See, e.g., Lane County v. Heintz Const. Co. et al,* 228 Or 152, 364 P2d 627 (1961). We find no basis in the language of the statute for concluding that the word "costs" includes any interest factor. We also find nothing in the legislative history or the state's arguments to persuade us that the legislature intended to include interest in costs without so stating.

The state contends that "[t]here is no indication anywhere that the legislature intended to make a long-term interest free loan of state funds so several counties would benefit." The difficulty with that contention, and with many of the state's other points, is that the interest which the state maintains should be includable in the reimbursable costs is not a defined rate of interest on a definable loan. What the state says should be included is instead really the lost earnings that the transferred general fund monies might have generated if they had not been transferred. In effect, the state defines "costs" as being synonymous with "opportunity cost." If that is what the legislature meant, it was far less specific

than it had to be for us to recognize that as its intent. The trial court did not err in its interpretation of ORS 530.115(2).

By Oregon Laws 1939, chapter 478, the legislature established a program whereby counties could convey forest lands they had acquired "through foreclosure of tax liens or otherwise" to the State Board of Forestry. The 1939 legislation provided that, after deducting expenses, the state would retain 10 percent of the remaining revenues obtained from the lands and would distribute 90 percent to the counties in which the lands are located. Or Laws 1939, ch 478, § 6. The statutes and the distribution formula have been amended periodically since 1939. The distribution formula was revised most recently by Oregon Laws 1969, chapter 428, section 1 (codified as ORS 530.110).[3] *See also* ORS 530.115(1). In general outline, the 1969 Act revised the formula for deducting the state's expenses, set the state's retainage at 25 percent and provided for distribution of the remaining 75 percent to the counties.

The counties argue that the legislation creates a contractual arrangement between them and the state and that the state holds the forest lands and revenues in trust. Therefore, according to the counties, the state cannot unilaterally revise the distribution formula, *i.e.*, the legislature cannot amend ORS 530.110 without violating Oregon Constitution, Article I, section 18 (proscribing taking of private property without compensation) and section 21 (proscribing the impairment of contractual obligations). The counties do *not* argue that any amendments that *have* been made to the distribution formula since 1939 violate either the contractual or trust relationship that they assert exists.[4] They also make no argument in this court that the state is acting inconsistently with the present distribution statute.[5] The counties'

---

[3] The history of the legislation is discussed in *School District 129J v. Fosdick*, 68 Or App 23, 681 P2d 1167, *rev allowed* 298 Or 68 (1984), *rev dismissed* 299 Or 314 (1985).

[4] The trial court concluded, consistently with the counties' position:

"All prior changes and amendments to the [statutes] and, thus, the contract and trust relationship described above resulted from and amounted to mutual agreement to modify for mutual benefit."

[5] The counties alleged in their complaint that the state

"* * * has erroneously construed ORS 530.110 to permit a continuous 15% appropriation irrespective of the balance in the Department of Forestry sub-

contention is that any future amendment of the formula, without their approval, would be a breach of contract and trust and a violation of the cited constitutional provisions.

■ The threshold question is whether the counties' contention gives rise to a justiciable controversy.[6] In *Brown v. Oregon State Bar,* 293 Or 446, 449, 648 P2d 1289 (1982), the Supreme Court explained:

> "* * * In order for a court to entertain an action for declaratory relief, the complaint must present a justiciable controversy. Justiciability is a vague standard but entails several definite considerations. A controversy is justiciable, as opposed to abstract, where there is an actual and substantial controversy between parties having adverse legal interests. *Cummings Constr. v. School [Dist.] No. 9,* 242 Or 106, 408 P2d 80 (1965). The controversy must involve present facts as opposed to a dispute which is based on future events of a hypothetical issue. *Id.* A justiciable controversy results in specific relief through a binding decree as opposed to an advisory opinion which is binding on no one. *Id.* The court cannot exercise jurisdiction over a nonjusticiable controversy because in the absence of constitutional authority, the court cannot render advisory opinions. *Oregon [Cry.] Mfgs. Ass'n. v. White,* 159 Or 99, 109, 78 P2d 572, 576 (1938)."

■ ORS 28.020 authorizes courts to render a "declaration of rights, status or other legal relations" under a statute. The counties seek a declaration here that existing statutes create contractual and trust rights and relationships. However, whether or not those relationships exist, there is no dispute over the parties' present rights and duties under the statutes. The only effect the counties ascribe to the alleged contract and trust is to prevent the state from changing the statutory distribution formula "unilaterally." Because there

---

account and has withheld funds in excess of those needed to maintain the $475,000 level [specified by ORS 530.110(1) as the reserve amount for deductions]."

That allegation is not a subject of argument by the parties in this appeal and was not the subject of any specific written finding or conclusion by the trial court.

[6] The state asserted in the trial court that there was no justiciable controversy. The trial judge disagreed and, on appeal, the state does not assign error to or challenge his conclusion. We are nevertheless required to decide whether a justiciable controversy is presented, because the question is jurisdictional. *State Farm Fire & Cas. v. Reuter,* 294 Or 446, 657 P2d 1231 (1983); *Brown v. Oregon State Bar,* 293 Or 446, 648 P2d 1289 (1982).

has been no such change, the question the counties present is abstract, hypothetical and pertains only to possible future events. This case is distinguishable from *Brown v. Oregon State Bar, supra,* where the court concluded that "the substance of the controversy concerns the interpretation of a statute" and that the "controversy involves present facts, the plaintiff's existing statutory duty." 293 Or at 450. Here, conversely, there is no controversy about an *existing* statutory duty; the controversy is over whether the state's acknowledged statutory duty to follow the distribution formula of ORS 530.110 is subject to *subsequent* change by the state legislature. The state correctly observed in a memorandum filed in the trial court:

> "One way of looking at the justiciable controversy question is to ask what would happen in the event the court did not grant the relief requested. In the present case, the answer is: 'nothing.' Should the court dismiss the case for want of [a] justiciable controversy, there would be no prejudice to the plaintiff; the parties would continue to conduct business as they have for the past 50 years.

> "The 1983 legislature has met and adjourned and no change was made to the current relationship between the state and the counties. Moreover, there was no threat of changing the relationship between the state and the counties regarding the state forest lands."

In practical effect, the counties seek to enjoin the legislature from amending a statute. The Supreme Court recognized the limitations on judicial authority in *Hauke v. Ten Brook et al.,* 122 Or 485, 491, 259 P 908 (1923):

> "* * * While we have authority to declare an ordinance void when passed, there is no power in the court to restrain the council from passing any illegal ordinances. * * *"

We conclude that neither the trial court nor we may exercise jurisdiction over the counties' second and third claims.

Judgment on second and third claims vacated; otherwise affirmed.