Argued and submitted March 12, reassigned September 29, affirmed in part, reversed in part and remanded to trial court with instructions December 30, 1986, reconsideration denied February 3, 1987

## TILLAMOOK COUNTY et al,
*Petitioners on Review,*

*v.*

## STATE OF OREGON, acting by and through STATE BOARD OF FORESTRY et al,
*Respondents on Review.*

(TC 135,593; CA A32152; SC S32255)

730 P2d 1214

Malcolm F. Marsh, Salem, argued the cause for petitioners on review. With him on the petition were Clark, Marsh, Lindauer & McClinton, Salem.

Michael D. Reynolds, Assistant Attorney General, Salem, argued the cause for respondents on review. With him on the response to the petition were Dave Frohnmayer, Attorney General, William F. Gary, Deputy Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Peterson, Chief Justice, and Lent, Linde, Campbell, Carson and Jones, Justices.

PETERSON, C. J.

## PETERSON, C. J.

Plaintiffs are 12 Oregon counties who brought this declaratory judgment action pursuant to ORS 28.010 *et seq.* Defendants are the State of Oregon, acting by and through the Oregon State Board of Forestry (Board of Forestry), the State Treasurer, the Secretary of State, the Oregon State Department of Revenue and the Oregon State Department of Transportation (ODOT).[1]

This case involves two statutory schemes. The first authorizes a county to convey tax foreclosed forest lands to the Board of Forestry in order to have such lands protected, reforested and designated state forestry lands. ORS 530.010 to 530.170. Under this plan the state assumes management responsibilities for the land, and the state and the county divide revenues derived from such forestry lands under a statutory distribution formula. ORS 530.110. The second statute at issue provides for the state's exchange of state forestry lands — this case involves tax-foreclosed forest land previously conveyed by Linn County to the Board of Forestry from which Linn County gains revenue pursuant to ORS 530.110 — for a specific tract of land to be used as a state park, from which Linn County would receive no revenue. Or Laws 1979, ch 792.

Linn County and 11 other counties filed a complaint seeking a declaratory judgment "declaring the rights and responsibilities of the parties." Their complaint contains these contentions:

"1.  When Plaintiffs deeded the lands to the State as an

---

[1] Paragraph III of the complaint alleges:

"State Treasurer Clay Meyers [*sic*: Myers] was and is now vested with authority to receive and disburse state funds, including receipts and disbursements of revenue from state forest lands; Secretary of State Norma Paulus was and is now responsible for setting systems of accounting and auditing for state agencies, including the state Board of Forestry; Department of Revenue was and is now vested with the authority to administer the revenue and tax laws of the state, including the authority to levy ad valorem taxes; Department of Transportation was and is now vested with the authority to implement and prepare the state transportation policy, including acquisition of property for state parks through the Parks and Recreation Division."

No claim has been made that any defendant is neither a necessary nor proper party. Nor has any defense been asserted that agency review under the Administrative Procedures Act is appropriate.

acceptance of Defendant State's offer and for good and valuable consideration, a contractual obligation arose between the parties.

"2. The State, acting through the Legislature, cannot unilaterally change the terms of the revenue disbursement or other areas of the obligation for all lands heretofore acquired.

"3. Defendant State, by its actions and words, has attempted to unilaterally change the contract terms affecting the rights of the counties and has enacted legislation allowing for exchange of valuable state forest timber land for non-revenue producing state parks.

"4. The exercise by the State of further modifications or of attempts to make actual exchange of lands would constitute a breach of contract between the parties and an impairment of the right of contract guaranteed by the Oregon Constitution, Article I, §§21 and 18."

## I.   HISTORICAL FACTS, 1931-1979

In 1931 the legislature authorized counties to convey forest land owned by them to the state. Or Laws 1931, ch 93. Under this chapter the county was required to clear the title, and after the conveyance the Board of Forestry was to manage the property and the county was to receive five cents per acre per year and 12.5 percent of all proceeds from the sale of timber. The state received the balance to be used as part of the irreducible school fund.

In 1939, the legislature amended the distribution formula respecting revenues from conveyed tax foreclosed lands. Or Laws 1939, ch 478. Under this chapter, the state was to deduct all costs of administration, protection and reforestation of state forestry lands from proceeds of the sale of timber and receive 10 percent of the balance, with the county receiving 90 percent. Or Laws 1939, ch 478, § 6.

In 1941, the distribution formula was amended to provide that 75 percent of timber sale revenue was to go to the county and 25 percent was to go the state. Or Laws 1941, ch 236, § 9, codified as amended at ORS 530.110. The 1941 amendments provided that the county court or the board of county commissioners of any county may transfer land acquired by tax foreclosure to the state "in consideration of the payment to such county of the percentage of the revenue derived from such lands as provided in [ORS 530.110]." Or

Laws 1941, ch 236, § 3 codified as amended at ORS 530.030(1). However, with respect to lands conveyed before the 1941 amendment, the legislature provided that the distribution formula as it existed at the time of the conveyance would continue to apply unless the county approved the change in the distribution formula. Or Laws 1941, ch 236, § 12, codified as amended at ORS 530.170.

In 1948, the voters adopted Article XI-E of the Oregon Constitution. It authorized the issuance of general obligation bonds "to provide funds for forest rehabilitation and reforestation and for the acquisition, management, and development of lands for such purposes." Implementing legislation, adopted the following year, created a sinking fund to be derived from specified sources, to provide for the payment of the principal and interest due on the bonds.[2] Or Laws 1949, ch 102, codified as amended at ORS 530.210 to 530.290. Because the sinking fund was inadequate to retire the bonded debt, the state from time to time transferred general fund revenue to the sinking fund. As a result, ORS 530.115 was enacted in 1969 and required counties to reimburse the state for the costs of forest rehabilitation and management from the counties' share of revenue derived from state forest land rehabilitated by bond proceeds.

In 1969, the legislature amended the distribution statute to its present form. Or Laws 1969, ch 428, § 1 codified at 530.110. ORS 530.110 provides that 15 percent of all timber

---

[2] A "sinking fund" is a fund established to accumulate assets and/or their earnings earmarked for the retirement of bonds or other long term obligations. Black's Law Dictionary 1242 (5th ed 1979). ORS 530.280 provides:

"(1) There is hereby created a sinking fund account to provide for the payment of the principal and interest of all bonds issued pursuant to the provisions of ORS 530.210 to 530.290. The funds shall consist of the following:

"(a) All moneys derived from taxes levied under under ORS 530.290; and

"(b) All moneys derived from the sale, exchange or use of land acquired pursuant to ORS 530.240; and

"(c) Except as provided in ORS 530.115, all moneys received from the disposal of forest products created through the expenditures of moneys available under the Oregon Forest Rehabilitation Act for reforestation.

"The moneys referred to in paragraphs (a) to (c) of this subsection shall be set aside for sinking fund purposes until the issues of bonds which provided funds for such reforestation have been retired. The State Forester shall designate and keep records of the area of land on which funds from particular issues of bonds have been expended for such reforestation."

sales revenue be paid to the state for the expenses of management and fire protection. The remaining 85 percent is divided 75 percent to the county and 25 percent to the state.

All 12 plaintiffs transferred tax foreclosed lands to the state pursuant to the 1931 legislation or its amendments, codified as amended at ORS 530.010 to 530.170, legislation that gave counties the choice of retaining and managing tax foreclosed lands themselves or transferring the lands to the state to manage. The state admits that it sought and bargained for the land, that it "actively promoted the benefits of county participation in the program which included assurances that the lands would be used to produce revenue, and that the revenue would be distributed to the counties in a manner then provided by statute, unless the counties agreed to any changes in the distribution formula." On this latter point, the counties apparently agree and the trial court found that "[a]ll prior changes and amendments to the State Forest Acquisition Act and Forest Rehabilitation Act (ORS 530.010 - 530.290) * * * resulted from and amounted to mutual agreement [by the counties] to modify for mutual benefit."

In 1979 the legislature passed laws directing the Board of Forestry to cooperate with ODOT in the exchange of state forest lands located in Linn County for the privately owned Crabtree Valley tract. Or Laws 1979, ch 792 (hereinafter referred to as the "Crabtree Valley Act").[3] The

---

[3] The Act in its entirety reads:

"SECTION 1.(1) The Legislative Assembly declares that the lands described in subsection (4) of this section, commonly known as Crabtree Valley, represent a unique example of old-growth timber that should be preserved in its natural state, provided, however, that its owners and the local governments that receive revenues from this area are not forced to suffer an unreasonable economic loss.

"(2) As soon as reasonably possible, the Department of Transportation shall initiate negotiations to acquire the lands described in subsection (4) of this section for use as a state park.

"(3) The negotiations described in subsection (2) of this section may include the owners of the land described in subsection (4) of this section, representatives of all units of local governments that receive revenues from the lands described in subsection (4) of this section, and a representative of the Crabtree Valley Protection Association.

"(4) Subsection (1) of this section declares state policy on the lands within section 16, township 11 south, range 3 east, Willamette Meridian, Linn County, State of Oregon.

"(5) The Department of Transportation shall seek to acquire all or part of the

Crabtree Valley tract is a stand of old growth timber that the legislature seeks to preserve as a state park. The state plans to exchange state forest lands that it acquired from Linn County under ORS 530.010 to 530.170. Linn County receives timber revenue from these lands. It would receive no revenue from land used as a state park.

lands described in subsection (4) of this section by any means at its disposal, including, but not limited to, an exchange of lands that are owned by the State of Oregon and managed by the State Forestry Department, including, but not limited to, lands located in the following areas:

"(a) In township 11 south, range 2 east, Willamette Meridian, Linn County, State of Oregon.

"(b) In township 12 south, range 1 east, Willamette Meridian, Linn County, State of Oregon.

"(c) In township 12 south, range 2 east, Willamette Meridian, Linn County, State of Oregon.

"(6) The State Forestry Department shall cooperate with the Department of Transportation in this transfer of state lands under this section to provide compensation for lands identified under this section.

"SECTION 2.(1) Lands described in subsection (2) of this section that are acquired by the State of Oregon and held by and through the Department of Transportation shall be held and used for state park purposes.

"(2) Subsection (1) of this section applies to all lands located within section 16, township 11 south, range 3 east, Willamette Meridian, Linn County, State of Oregon. Lands described in this subsection shall be known as the Crabtree Valley State Park.

"(3) The state park described in this section shall be managed by the State Parks and Recreation Division of the Department of Transportation in a manner that will:

"(a) Retain the primitive character of the area;

"(b) Preserve the trees in the park; and

"(c) Preserve, in a natural state, the ecosystems related to the trees in the park.

"SECTION 3. The Department of Transportation shall seek legislative approval before final acquisition of the lands described in subsection (4) of section 1 of this Act if any of the parties described in subsection (3) of section 1 of this Act feel they will suffer unreasonable economic loss.

"SECTION 4. This Act being necessary for the immediate preservation of the public peace, health and safety, an emergency is declared to exist, and this Act takes effect on passage."

Oregon Laws 1979, chapter 792 was codified at ORS 390.215 (1979). Sections 1 and 3 of chapter 792 appeared in ORS as temporary or note sections. In 1981, the Legislative Counsel Committee deleted these temporary sections, apparently under the discretion granted the Committee under ORS 173.160 (editorial power). However, in the absence of an act to amend or repeal, chapter 792 remains the law.

ODOT has entered into a real property exchange agreement with the owner of the tract. By the terms of the Crabtree Valley Act, the agreement requires legislative approval. (See note 3.) In the event of legislative approval of the exchange, "revenue loss per year [for Linn County] would begin at about $46,000 * * * and escalate upward." Fiscal Analysis of Proposed Legislation, HB 3144, June 27, 1979. Legislative approval has not yet been obtained.

## II.   THE COUNTIES' CLAIMS

The counties make two claims before this court.[4] First, as to the Crabtree Valley matter, the counties seek a declaration that the counties' conveyance of tax-foreclosed lands to the state pursuant to ORS 530.010 to ORS 530.170 created a contract or trust relationship between the parties and that the state cannot unilaterally transfer such revenue-producing lands to third parties in exchange for non revenue-producing lands, as contemplated by the Crabtree Valley Act, without being in breach of this contract or trust.

Second, the counties seek a declaration that a contract or trust relationship exists with respect to conveyed tax-foreclosed lands and that the state may not unilaterally alter the revenue distribution formula of ORS 530.110. The counties state that they "are not complaining about past changes in the distribution formula, as the counties agreed to such changes."

In response to both claims, the state argues that no contract or trust relationship can exist because "[c]ounties act only as the state's agents or instrumentalities; they have no private rights or powers which they may assert against the state."

The Court of Appeals, on its own motion, questioned whether a justiciable controversy existed on these claims, and

---

[4] In the trial court the counties also sought a declaration that the amounts they are required to reimburse the state for forest rehabilitation and management under ORS 530.115(2) do not include an "interest component." The state argued that such reimbursement costs include the interest that could have been earned on the general fund monies if they had been invested as part of the general fund. On this issue the counties prevailed at the trial court and before the Court of Appeals. The issue is not in dispute here.

held that "neither the trial court nor we may exercise jurisdiction over the counties' * * * claims [for a declaration of contract or trust]." *Tillamook County v. State Board of Forestry,* 75 Or App 344, 350, 707 P2d 585 (1985).

Although all 12 counties are plaintiffs on all claims, the two issues before us must be analyzed as (1) a claim by all twelve counties that the revenue distribution formula of ORS 530.110 is a vested right in the counties that the state — specifically, the legislature — cannot alter (a claim all 12 counties share in common), and (2) a claim by Linn County that the state cannot convey revenue-producing Linn County forest land in exchange for land that produces no revenue. We hold that the first claim is not justiciable. The second claim is.

We hold that Linn County's conveyance of tax foreclosed lands pursuant to ORS 530.010 to 530.170 created a relationship between Linn County and the state that entitles Linn County to revenue as set forth in the statutory distribution formula, and that a justiciable controversy exists between Linn County and the defendants respecting the conveyance of forest land for land to be used as a state park.

## III.  THE REVENUE DISTRIBUTION FORMULA CLAIM

■    The essence of the counties' claims concerning the revenue distribution formula is contained in this contention:

"The State, acting through the Legislature, cannot unilaterally change the terms of the revenue disbursement or other areas of the obligation for all lands heretofore acquired."

As stated, the counties concede that they agreed to past changes in the distribution formula; they seek a declaration that the state cannot change the formula without the consent of the counties. That claim presents no justiciable controversy.

Challenges to future legislative amendments are not justiciable. As recognized by the Court of Appeals, it is beyond the power of a court to enjoin the legislature from passing a statute. *Tillamook County v. State Board of Forestry, supra,* 75 Or App at 350. The rule we stated in *Hauke v. Ten Brook,* 122 Or 485, 491, 259 P 908 (1923), with respect to city councils is equally applicable to the legislature: "While we have authority

to declare an ordinance void when passed, there is no power in the court to restrain the council from passing any illegal ordinances."

Although declaratory judgment is not an action to enjoin or restrain, the underlying reasons for the rule just stated apply here as well. Apart from the Crabtree Valley matter, the counties can point to no statute or administrative action that places in question their interests under the distribution formula. We have stated that Oregon courts may not engage in examination of the laws in the absence of an actual controversy between two parties. *Oregon Medical Association v. Rawls,* 281 Or 293, 574 P2d 1103 (1978). *Rawls* involved the validity of a legislative enactment. The counties' request herein differs from *Rawls* in that here the parties actually disagree. But this case is one step beyond the limitation stated in *Rawls* in that the plaintiffs seek a judicial declaration of the validity of *potential* legislative enactments or, as stated by the Court of Appeals, "whether the state's acknowledged duty to follow the distribution formula of ORS 530.110 is subject to *subsequent* change by the state legislature." 75 Or App at 350 (emphasis in original). There is nothing beyond an abstract question before the court. Oregon courts do not give advisory opinions. *Brown v. Oregon State Bar,* 293 Or 446, 449, 648 P2d 1289 (1982).

The counties argue that the justiciability requirement should be relaxed because the case presents an issue of public importance concerning "the State's and County's rights and duties in managing forest lands." We have "reject[ed] the view that public importance can make a nonjusticiable case justiciable." *Oregon Medical Association v. Rawls, supra,* 281 Or at 302.

## IV.  THE CRABTREE VALLEY DISPUTE

The Crabtree Valley dispute raises a different question. Linn County deeded forest land to the state under a statutory arrangement providing that a percentage of the revenue derived from the sale of forest products from such lands shall be paid to the county. ORS 530.030, 530.110, 530.115. Linn County stands to lose revenue if the transfer of the Crabtree Valley tract is completed.

The purpose of our declaratory judgment statute is "to settle and afford relief from uncertainty and insecurity

with respect to rights, status and other legal relations, and is to be liberally construed and administered." ORS 28.120.[5] In declaratory judgment actions

"[an] accomplished physical injury need not necessarily be alleged. It is sufficient if a dispute or controversy as to legal rights is shown, which, in the court's opinion, requires judicial determination - that is, in which the court is convinced that by adjudication a useful purpose will be served. The requisites of justiciability must be present." *Oregon Cry. Mfgs. Ass'n v. White,* 159 Or 99, 108-09, 78 P2d 572 (1938).

ODOT's exercise, pursuant to the Crabtree Valley Act, of its delegated authority to complete a contract to exchange revenue-producing forest lands created a concrete and immediate threat to Linn County's interest in the receipt of revenue from forest land. The state asserts that no controversy exists until the legislature approves the transfer. To the contrary, legislative approval will not further define the issues or develop factual data necessary for the resolution of the issues before us, nor will it change the fact that without a judicial declaration Linn County must attempt to plan and budget without knowing whether it has a right to revenue from timber harvests. The exchange agreement is in progress. If legislative approval is given, Linn County's damage will be complete. Linn County need not await completion of damage to establish its right to relief now. A declaration of existing

---

[5] ORS 28.010 provides:

"Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed. * * *"

ORS 28.020 provides:

"Any person * * * whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or franchise may have determined any question of construction or validity arising under any such instrument, constitution, statute, municipal charter, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

ORS 28.030 provides:

"A contract may be construed either before or after there has been a breach thereof."

ORS 28.120 provides:

"This chapter is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations, and is to be liberally construed and administered."

obligations[6] by this court would serve one of the primary purposes of the Uniform Declaratory Judgments Act in that it would remove uncertainty and insecurity from legal relations between the county and state and thus "clarify, quiet and stabilize them before irretrievable acts have been committed or undertaken," 1 Anderson, Declaratory Judgments 370 (2d ed 1951).

The State asserts that the counties are "mere instrumentalities" of the state. We need not address, as a broad proposition, the relationship of counties to the state. With regard to the narrow issue of county management of county lands, the statutes dispose of the question. Under existing statutes, counties act independently of the state with respect to management of county lands. The legislature has granted counties various powers to manage and dispose of forest land acquired by tax foreclosure or otherwise. Counties have the power to sell such land while keeping it on the tax roll, ORS 275.090, 275.110; to manage the land as a county forest, ORS 275.320; to convey the land to another governmental body for consideration, ORS 275.070; and to convey the land to the state "in consideration of the payment to such county of the percentage of the revenue derived from such lands as provided in ORS 530.110." ORS 530.030(1).

Counties have been given broad powers with respect to their tax-foreclosed lands. *See* ORS 203.035, ORS chs 271 and 275. Title to such lands is in the county, not the state. ORS 275.020. The county has the power to convey such lands "as the county governing body may deem to be for the best interests of the county." ORS 275.070.

Counties hold and assert their interest in county lands as corporate bodies. Counties have existed in corporate form with the power to sue and be sued since before statehood. ORS 203.010, originally enacted in 1854, General Laws of Oregon, chapter IX, § 1, p 672 (Deady 1845-1864), provides:

"Each county is a body politic and corporate for the following purposes:

---

[6] In declaring existing obligations between the state and Linn County we have no occasion to consider the counties' constitutional challenges. Amendments to ORS chapter 530 are speculative. With regard to the Crabtree Valley Act, final implementation is yet to occur. The legislature may yet provide a mechanism for county approval or reimbursement of lost revenues.

"(1) To sue and be sued;

"(2) To purchase and hold for the use of the county lands lying within its own limits and any personal estate;

"(3) To make all necessary contracts; and

"(4) To do all other necessary acts in relation to the property and concern of the county."

Under these statutes counties possess interests that may be asserted against the state.

These interests are defined by statute as well. The statutory land exchange and revenue distribution scheme gave Linn County the option of transferring forest lands to the state to manage. The statutory plan contemplates consensual dealings between the counties and the state (through the Board of Forestry), dealings that would create enforceable rights insofar as the state's management of formerly county owned forest land is concerned.

The state admits that it "actively promoted the benefits of county participation in the program which included assurances that the lands would be used to produce revenue, and that the revenue would be distributed to the counties in a manner then provided by statute, unless counties agreed to any changes in the distribution formula." Pursuant to the enactment of the statutory plan and to the assurances of the state, counties gave up control over their forest lands in consideration for a percentage of the revenue derived from such lands.

The trial court held that a contractual or trust relationship existed between the state and the counties. We deem it unnecessary to describe the arrangement in contract or trust terms. Rather, we look to the statutes to determine what flows from them.

Under ORS chapter 530, Linn County has a protected, recognizable interest that can be asserted against the defendants. Linn County transferred forest land, land that it could have kept and administered for its own benefit, to the state, "in consideration of the payment to [Linn County] of the percentage of revenue derived from such lands." ORS

530.030(1). It is entitled to enforce that claim for its percentage of revenue, and the state cannot avoid its obligation to Linn County by conveying the property to a third person.[7]

Accordingly, the Court of Appeals' decision that no justiciable controversy existed concerning the Crabtree Valley land transactions is reversed. In all other respects, the decision of the Court of Appeals is affirmed.

Remanded to the trial court for entry of a final decree consistent with this opinion.[8]

Remanded.

---

[7] ORS 530.040 may support our conclusion. It provides for the exchange of forest land. ORS 530.040(4) requires:

"All lands received in exchange shall have the same status and be subject to the same provisions of law as the lands given in exchange therefor."

This statute was not cited or discussed in the briefs, so we draw no conclusions from it other than as stated above.

[8] The decree, insofar as the Crabtree Valley matter is concerned, should declare that the exchange of the Crabtree Valley property without receiving forest land in return or otherwise protecting Linn County's right to revenues from the Crabtree Valley property, is impermissible, under existing statutory obligations.